92 P.3d 453 (2004)
Michael J. CACIOPPO, Individually and on Behalf of all Property Taxpayers of Eagle County School, District Re-50J, Plaintiff-Appellant/Cross-Appellee
v.
EAGLE COUNTY SCHOOL DISTRICT RE-50J, Defendant-Appellee/Cross-Appellant and
Jody Caruthers, Eagle County Assessor, Karen Sheaffer, Eagle County Treasurer, and the Eagle County Commissioners, all in their official capacities, Defendants.
No. 03SA336.
Supreme Court of Colorado, En Banc.
June 14, 2004.
*456 Michael J. Cacioppo, pro se, Edwards, Colorado.
Bernard, Lyons, Gaddis & Kahn, P.C., Richard N. Lyons, II, Adele L. Reester, Longmont, Colorado, Attorneys for Defendant-Appellee/Cross-Appellant Eagle County School District Re-50J.
No Appearance by or on behalf of Defendants Jody Caruthers, Eagle County Assessor, Karen Sheaffer, Eagle County Treasurer, and the Eagle County Commissioners, all in their official capacities.
Justice KOURLIS delivered the opinion of the court.

I. Introduction
In this case, we review a constitutional challenge to a ballot issue approved by voters in Eagle County raising taxes to allow a cost-of-living increase for the school district. Michael Cacioppo, the petitioner for purposes of this appeal, filed suit in Eagle County District Court nearly four months after the election seeking to overturn the election. He argued that the ballot title and the notice sent to voters violated article X, section 20 of the Colorado Constitution, and tainted the results of the election by including deliberately misleading information.
*457 The Eagle County School District (the "District") countered that all of Cacioppo's claims were time-barred by section 1-11-203.5, 1 C.R.S. (2003), since Cacioppo failed to file a verified petition contesting the ballot title within five days of the setting of the ballot title. Cacioppo argued that section 1-11-203.5 violates article X, section 20 of the Colorado Constitution.
The trial court ruled that while section 1-11-203.5 is constitutional, it did not bar any of Cacioppo's claims since that statute bars only form or content challenges to a ballot title and, in the court's view, all of Cacioppo's claims were substantive in nature. However, the trial court ruled in favor of the District on the merits, holding that the ballot issue substantially complied with constitutional requirements.
Cacioppo now appeals that decision. The District cross-appeals, reasserting its argument that section 1-11-203.5 operates to bar all of Cacioppo's claims. Cacioppo in turn argues that section 1-11-203.5 is unconstitutional.
We now hold that section 1-11-203.5 is constitutional. We conclude that its time limits are reasonable and were carefully crafted to avoid a conflict with the state constitution.
We also hold that all of Cacioppo's justiciable claims were time-barred either by section 1-11-203.5 or by section 1-11-213, 1 C.R.S. (2003), which requires a claimant who contests the results of an election to file a written statement of intent within ten days of the filing of the official survey of returns.
We hold that one of Cacioppo's claims is not ripe for a decision. We do not reach the merits of any of his claims. Accordingly, we affirm the decision of the trial court refusing to overturn the election, but on different grounds.
In this opinion, we first outline the factual and procedural background of the case. We then address the constitutionality of section 1-11-203.5, resolving the meaning of various terms in that statute in order to assess its constitutionality. Having concluded that the statute is constitutional, we next conclude that Cacioppo's claim concerning the ballot title is form and content-based, not substantive, and is thus time-barred by section 1-11-203.5. Lastly, we determine that the claims relating to the notice required by article X, section 20, clause 3(b) of the Colorado Constitution concern the resultsand not the substanceof the election and that they are, therefore, time-barred by section 1-11-213. We conclude by denying Cacioppo's claim for attorney's fees.

II. Factual and Procedural Background
The parties stipulate to the following facts. On November 6, 2001, voters in Eagle County approved a mill levy increase for the District by way of a ballot issue[1] whose title[2] read "Eagle County School District Supplemental Cost of Living Adjustment Ballot Issue 3D" ("Ballot 3D" or the "ballot issue"). The submission clause[3] of that ballot issue asked voters:
SHALL THE EAGLE COUNTY SCHOOL DISTRICT RE-50J TAXES BE INCREASED $3,115,827 ANNUALLY AND BY SUCH AMOUNTS AS ARE RAISED THEREAFTER BY THE IMPOSITION OF A MILL LEVY WITHOUT LIMITATION AS TO AMOUNT OR RATE UPON ALL TAXABLE PROPERTY WITHIN THE DISTRICT, COMMENCING IN TAX YEAR 2001 AND CONTINUING THEREAFTER AS PROVIDED *458 BY LAW, FOR THE PURPOSE OF PROVIDING THE DISTRICT WITH AN ANNUAL SUPPLEMENTAL COST OF LIVING ADJUSTMENT AS AUTHORIZED BY THE PUBLIC SCHOOL FINANCE ACT OF 1994, AS AMENDED OR AS MAY BE AMENDED, INCLUDING ANY SUCCESSOR STATUTE, WITH THE PROCEEDS OF SUCH TAXES TO BE COLLECTED AND SPENT BY THE DISTRICT AS A VOTER-APPROVED REVENUE AND SPENDING CHANGE IN EACH YEAR, WITHOUT REGARD TO ANY SPENDING OR REVENUE LIMITATIONS CONTAINED IN SECTION 20 OF ARTICLE X OF THE COLORADO CONSTITUTION?
Citizens for Quality Education (CQE), a group of Eagle County residents, propounded the ballot issue, pursuant to section 22-54-107.5, 7A C.R.S. (2003), a 2001 amendment to the Public School Finance Act of 1994, § 22-54-101, et seq., 7A C.R.S. (2003). Ch 127, sec. 34, § 22-54-107.5, 2001 Colo. Sess. Laws 339, 364-65. Section 22-54-107.5 provides that a school district may conduct an election to raise property taxes in order "to provide a supplemental cost of living adjustment for the district." § 22-54-107.5(1).
Shortly after section 22-54-107.5 was enacted, CQE proposed a ballot issue that would raise property taxes in Eagle County to provide cost-of-living salary increases to the District's personnel. CQE presented the proposal to the Eagle County School Board (the "School Board") and, beginning in May of 2001, the School Board met several times to discuss the possibility of certifying the issue for the November 2001 election.
An actual draft of the proposed ballot issue was made available for the first time for both School Board and public review at the July 11, 2001, meeting. One of the Eagle County residents in attendance at that meeting was Michael Cacioppo, the plaintiff in this case. Cacioppo spoke to the School Board and expressed his concern that the ballot issue did not comply with the Colorado Constitution, particularly article X, section 20.
The School Board ultimately received legal advice that the ballot issue complied with all state constitutional and statutory requirements. At the next meeting, on August 8, 2001, the School Board passed a resolution ratifying the proposed ballot issue. The School Board then forwarded the ballot issue to Sara Fisher, the Eagle County Clerk and Recorder, in advance of the September 12, 2001, certification deadline mandated by section 1-5-203(3)(a), 1 C.R.S. (2003).
Karen Stakbein, the District's Finance Director, submitted the District's notice of the ballot issue, as required by article X, section 20, clause (3)(b) of the Colorado Constitution, to Fisher, so that it could be mailed to voters by the Clerk and Recorder's office in time for the election. Strakbein prepared the financial statements required by (3)(b)(ii), (iii), and (iv). CQE prepared the statements in favor of the proposed ballot issue, as required by 3(b)(v), and Cacioppo prepared the statements against the proposal, also required by 3(b)(v). Voters approved the ballot issue at the election on November 6, 2001.
On February 25, 2002, Cacioppo filed this action against the District in Eagle County District Court, seeking declaratory and injunctive relief to overturn the election. In his complaint, Cacioppo alleged that Ballot 3D: (1) proposed a so-called "phased-in" tax and, as a result, its ballot title violated article X, section 20, clause 3(c) of the Colorado Constitution because it did not list the full final fiscal-year dollar increase as required for such proposals; (2) was susceptible to an interpretation that would permit a $3,115,827 tax increase every year indefinitely, and not just an initial increase of that amount, as purported; (3) violated clause 3(b)(ii) of article X, section 20 of the Colorado Constitution because it contained incorrect data in the financial disclosures required by that provision to be in the notice sent to voters; and (4) was false and misleading because it purported to pledge the entire tax increase to cost-of-living payments to employees when only two-thirds of the increase was intended for that purpose. Cacioppo also sought attorney's fees.
The District moved for summary judgment, arguing that Cacioppo's claims relating *459 to the ballot title were time-barred by section 1-11-203.5, and, alternatively, that the District had complied with all the requirements of the Colorado Constitution, particularly article X, section 20. In his response to the District's motion for summary judgment, Cacioppo argued that his claims concerning both the ballot title and the requirements of the Colorado Constitution, article X, section 20, were constitutional claims and, as such, were not form or content claims time-barred by section 1-11-203.5. He alternatively argued that if section 1-11-203.5 operated to bar any of his claims, the statute should be ruled unconstitutional in light of article X, section 20 of the Colorado Constitution.
The trial court denied the motion for summary judgment and set the matter for a bifurcated trial.[4] After the first phase of the trial, the court ruled that section 1-11-203.5 was constitutional but that it did not bar Cacioppo's claims since the court found them to be largely related to the substance of the ballot issue and not the form or content of the ballot title. Following the second phase of the trial, the court ruled in favor of the District on all of Cacioppo's claims, holding that the ballot title and the ballot issue as a whole sufficiently complied with article X, section 20 of the Colorado Constitution, and that nothing in the ballot issue was deceptive or misleading to voters.
Cacioppo appealed that ruling to the court of appeals on May 30, 2003. He argued that the trial court erred in concluding that the ballot issue substantially complied with article X, section 20 of the Colorado Constitution. The District cross-appealed, contending that section 1-11-203.5 time-barred all of Cacioppo's claims and that the trial court should have dismissed the claims on that basis. Cacioppo responded that section 1-11-203.5 is unconstitutional.
Because of the constitutional nature of the appeal, the court of appeals transferred the case to this court pursuant to section 13-4-109(1)(a), 5 C.R.S.(2003). See Kuhn v. State Dep't of Revenue, 897 P.2d 792, 795 (Colo. 1995). We accepted the transfer and now review the ruling of the trial court.

III. Constitutionality of Section 1-11-203.5

A. Background on Section 1-11-203.5
Section 1-11-203.5 (the "statute") was enacted as part of House Bill 94-1286 (the "bill"), which sought to amend the Uniform Election Code of 1992(UEC), §§ 1-1-101 through 1-13-803, 1 C.R.S. (2003). Ch. 200, secs. 1-105, 1994 Colo. Sess. Laws 1149, 1149-97; Hearing on HB 94-1286 Before the House State, Military, and Veterans' Affairs Committee, 59th Gen. Assembly, 2nd Reg. Sess. (Feb. 15, 1994) ("House Hearing") (statement of Rep. Allen); Hearing on HB 94-1286 Before the Senate State, Military, and Veterans' Affairs Committee, 59th Gen. Assembly, 2nd Reg. Sess. (March 8, 1994) ("Senate Hearing") (statement of Sen. Thiebaut).[5] The impetus for the bill was the 1992 passage of the constitutional amendment that implemented article X, section 20 of the Colorado Constitution. Since the passage of the UEC in 1992, that amendment created several new deadlines and imposed many new requirements on state and local election officials.[6]
Because of those increased responsibilities and shortened timelines, Senator Thiebaut *460 offered an amendment to the bill to add section 1-11-203.5 to the UEC. Senate Hearing (statement of Sen. Thiebaut); Ch. 200, sec. 64, § 1-11-203.5, 1994 Colo. Sess. Laws 1149, 1176-77. Section 1-11-203.5 sets out the exclusive procedure for contesting ballot titles in local elections. § 1-11-203.5(5). Subsection (1) of that statute states in relevant part that "all election contests arising out of a ballot issue or ballot question election concerning the order on the ballot or the form or content of any ballot title shall be summarily adjudicated by the district court sitting for the political subdivision within which the contest arises prior to the election." Subsection (2) provides that "[e]very such contest shall be commenced by verified petition filed by the contestor to the proper court, setting forth the grounds for the contest and a proposed alternative order for the ballot or alternative form or content for the contested ballot title." It further states that:
[t]he petition shall be filed and a copy served on the contestee within five days after the title of the ballot issue or ballot question is set by the state or political subdivision and for contests concerning the order of a ballot, within five days after the ballot order is set by the county clerk and recorder and not thereafter.
Id. The statute also gives the contestee five days to answer the petition and instructs the court to set the matter for an immediate trial, mandating an adjudication within ten days of the filing of the answer. Id. Subsection (3) provides that:
[i]f the court finds that the order of the ballot or the form or content of the ballot title does not conform to the requirements of the state constitution and statutes, the court shall provide in its order the text of the corrected ballot title or the corrected order of the measures to be placed upon the ballot and shall award costs and reasonable attorneys fees to the contestor.
Hence, the statute provides a twenty-day process for the court to hear complaints about the form or content of a ballot title and to correct any ballot titles whose form or content do not conform to state law. The date upon which that twenty-day process is to begin is the day that the ballot title is "set" by the state or the pertinent political subdivision.

B. How a Ballot Title is "Fixed" or "Set"
Because the UEC does not provide a definition of the term "set," it is not readily apparent what specific action of the political subdivision triggers the five-day contest limitation. However, our previous cases and the statutes governing ballot titles appear to treat the term "set" synonymously with the "fixing" of a ballot title. See § 1-40-106(1), 1 C.R.S. (2003) (directing the state title board to "designate and fix a proper fair title for each proposed law or constitutional amendment, together with a submission clause, at public meetings"); see also § 1-40-106(3)(b) (stating that "[i]n setting a title, the title board shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a `yes' or `no' vote will be unclear"); § 1-40-107(1) (permitting a registered voter not satisfied with the decision of the title board to "file a motion for a rehearing with the secretary of state within seven days after the decision is made or the titles and submission clause are set") (emphasis added); In re Proposed Initiative on Education Tax Refund, 823 P.2d 1353, 1355 (Colo.1991) ("The purpose of the title setting process is to ensure that both persons reviewing an initiative petition and the voters are fairly and succinctly advised of the import of the proposed law."). Thus, the plain meaning of the word "set" is synonymous with the word "fix" in the context of ballot titles.
The process for fixing a ballot title for municipal, county, and school district elections is governed by the procedures regulating municipal elections, which are found in part 1 of article 11 of Title 31. § 1-40-103(2), (3) & (4), 1 C.R.S. (2003); § 30-11-103.5, 9 C.R.S. (2003) (county elections); § 22-30-104(4), 7A C.R.S. (2003) (school district elections). Section 31-11-111, 9 C.R.S. (2003), sets forth the process through which the legislative body of a municipality "fixes" a ballot title. Subsection (2) permits that legislative body to refer a proposed or adopted *461 ordinance or resolution to the voters of that municipality and directs it to "fix a ballot title for the referred measure." Subsection (3) identifies the criteria to be considered "[i]n fixing the ballot title."
However, the statute does not state what specific action by the local legislative body will constitute a fixing or setting of the ballot title, at least for purposes of school district elections. The legislature's silence on this point stands in contrast to provisions governing statewide elections, which provide a detailed succession of activities to be completed by the state title board in "fixing" a ballot title. See, e.g., § 1-40-106, 1 C.R.S. (2003). Whereas section 1-40-106(1) explains that fixing takes place when the title board designates and finalizes the ballot title at a public meeting, section 31-11-111 contains no such reference. It states only that "[t]he legislative body of the municipality or its designee shall fix a ballot title for the referred measure." § 31-11-111(2). Because the statute is ambiguous on this point, we may look to prior law in determining what constitutes an act of setting or fixing of the ballot title for school district elections. Bd. of County Commrs. v. Costilla County Conservancy, 88 P.3d 1188, 1193 (Colo.2004); Colo. Dept. of Labor Employment v. Esser, 30 P.3d 189, 195 (Colo.2001).
Until 1994, local ballot issues were "fixed" by a local title board, 1-40-106(2), 1 C.R.S. (1994 Cum.Supp.), and statewide issues were "fixed" by a state title board, 1-40-106(3), 1 C.R.S. (1994 Cum.Supp.), in substantially similar fashion. At the time section 1-11-203.5 was enacted, section 1-40-106 generally applied to all ballot issues presented to voters and not just statewide ballot issues. 1-40-106(1), 1 C.R.S. (1994 Cum.Supp.). Section 1-40-106(2) pertinently stated that "[t]he title board shall by resolution fix a proper fair title for each proposed measure.... [and t]he governing board may designate when drafts of the text of the proposed amendment shall be submitted to the designated election official prior to the meeting at which the title is to be fixed."
This statute was repealed and replaced by section 31-11-111 in 1995. Ch. 120, sec. 1, 31-11-111, 1995 Colo. Sess. Laws 422, 428. Thereafter, section 1-40-106 no longer governed the initiative and referendum procedures for municipalities. Ch. 120, sec. 3, 1-40-103(2), 1995 Colo. Sess. Laws 422, 431; Ch. 120, sec. 4, 1-40-106, 1995 Colo. Sess. Laws 422, 431-32; Ch. 120, sec. 1, 31-11-101, et seq., 1995 Colo. Sess. Laws 422, 422-30. Because section 31-11-111 gives the local legislative body the power to fix the ballot title instead of the local title board, the legislature omitted any reference to a meeting of the title board.
However, the legislative declaration found in section 31-11-101 makes it clear that this omission was meant to give municipalities and other legislative bodies the freedom to determine what action would constitute the setting or fixing of the ballot title.[7] Thus, analogizing to the current procedures of the state title board and the past procedures for local title boards, it is presumed that the fixing of the ballot title is to be done in the normal course of business for the applicable legislative body. See XX-XX-XXX, 9 C.R.S. (2003) ("This article shall apply to municipal initiatives, referenda, and referred measures unless alternative procedures are provided by charter, ordinance or resolution."); see also XX-XX-XXX(4) ("Any protest concerning a *462 ballot title shall be conducted as provided by local charter, ordinance, or resolution."); XX-XX-XXX(1), 9 C.R.S. (2003) ("Except as otherwise provided in this article, the clerk shall render all interpretations and shall make all initial decisions as to controversies or other matters arising in the operation of this article.").
In conclusion then, we determine that fixing takes place upon the school board's final action during the school board's normal conduct of business. See XX-XX-XXX(4) ("The designated election official shall resolve any questions about the applicability of the procedures in part 1 of article 11 of title 31, C.R.S., after consultation with the county clerk of the county in which the school district administration office is located.").

C. The Setting of Ballot 3D's Title
In this case, the School Board discussed the language of the ballot title at a public meeting held on July 11, 2001. Cacioppo was at that meeting. The School Board gave final approval to the language of the ballot title at the following public meeting, held on August 8, 2001.; it passed a resolution by majority vote authorizing the ballot issue as worded. Several residents of Eagle County attended that meeting, including Cacioppo. The District printed a copy of the ballot title in the next days edition of the local newspaper.
As explained at trial, the School Board's approval of the ballot title set into motion the work of the District and the Eagle County Clerk and Recorder in finalizing an election calendar listing all of the important dates, including the September 12, 2001, certification deadline. Because the approval was the last, final action of the school board with regard to the ballot title, we conclude that such action constituted the fixing of the ballot title by the local legislative body.[8]
Under section 1-11-203.5, the event that triggers the five-day limitation for ballot title contests is the setting or fixing of the ballot title by the local legislative body conducting the electionin this case, the School Board. The School Board's final action settling or deciding the wording of the ballot title constitutes the setting or fixing of the ballot title under section 31-11-111. Thus, a person contesting the form or content of the ballot title pursuant to section 1-11-203.5 must do so within five days of the school board's final action concerning that ballot title.[9]
Here, Cacioppo made no formal objection to the ballot title until he filed this suit in February of 2002, some six months after the school board set the ballot title and four months after the election itself. Thus, his claims appear to be time-barred under section 1-11-203.5.

D. Constitutional Challenge to Section 1-11-203.5
Cacioppo concedes that he did not comply with the contest procedure of section 1-11-203.5. Instead, Cacioppo challenges the constitutionality of the five-day limitation found in section 1-11-203.5. Specifically, he claims that the limitation violates article X, section 20 of the Colorado Constitution. He argues that because that provision imposes several requirements on those proposing ballot issues to the voters, any additional statutory limitations placed on constitutional challenges to ballot issues must be unconstitutional. We disagree.
We note at the outset that "statutes enacted by the General Assembly are presumed to be constitutional and are therefore entitled to deference by the courts." In re Great Outdoors Colo. Trust Fund, 913 P.2d 533, 540 (Colo.1996). Accordingly, "a party asserting that a statute is unconstitutional has the burden of proving that assertion beyond a reasonable doubt." Zaner v. *463 Brighton, 917 P.2d 280, 286 (Colo.1996). In the course of our review, "we afford the language of constitutions and statutes their ordinary and common meaning [and] construe statutory and constitutional provisions as a whole, giving effect to every word and term contained therein, whenever possible." Bd. of County Comm'rs. v. Vail Assocs., Inc., 19 P.3d 1263, 1273 (Colo.2001) (internal citations omitted). We must also "consider the object to be accomplished and the mischief to be avoided by the provision at issue." City of Aurora v. Acosta, 892 P.2d 264, 267 (Colo. 1995) (internal quotation marks omitted). We will "deem a statute to be facially unconstitutional only if no conceivable set of circumstances exists under which it may be applied in a constitutionally permissible manner." People v. Vasquez, 84 P.3d 1019, 1021 (Colo.2004) (internal quotation marks omitted).
Because article X, section 20 of the Colorado Constitution has always been a self-executing provision, it has never required implementing legislation. Zaner, 917 P.2d at 286. Nevertheless, implementing legislation is permissible as long as it does not directly or indirectly impair, limit, or destroy the rights that the self-executing constitutional provision provides. Id. We recognize that the purpose of section 1-11-203.5 was to give effect to requirements found in article X, section 20, while accommodating the duties and responsibilities of election officials.
Cacioppo essentially argues that section 1-11-203.5 is unconstitutional because in addition to prohibiting form and content challenges beyond the five-day limit, it also restricts ballot title contests that are rooted in the constitution. That, he says, the statute cannot do. The only constitutional conflict that Cacioppo alleges, however, involves article X, section 20. He claims that each and every requirement that that constitutional provision imposes upon the setting of a ballot title may be raised at any time before or after the election and that section 1-11-203.5 conflicts with that alleged constitutional guarantee.
Despite the constitutional nature of his argument, the only authority Cacioppo cites for this proposition is the legislative history of section 1-11-203.5. He explains that Senator Thiebaut, who sponsored the bill proposing the statute, testified that section 1-11-203.5 would not affect constitutional challenges to an election, but would affect only those challenges involving the form or content of the ballot title. While we agree that section 1-11-203.5 cannot and does not time-bar constitutional challenges to the substance of a ballot issue or ballot question, we conclude that section 1-11-203.5 permissibly limits those challenges based on the form or content of the ballot title.
We reach this conclusion based on the plain language of section 1-11-203.5 and the absence of any conflict between its provisions and article X, section 20 of the Colorado Constitution. First, section 1-11-203.5 clearly contemplates challenges to ballot titles based on both statutory requirements as well as constitutional mandate. As noted above, section 1-11-203.5 addresses "all election contests arising out of a ballot issue or ballot question concerning the order on the ballot or the form or content of any ballot title" and states that any such contests "shall be summarily adjudicated by the district court." 1-11-203.5(1). It requires that those contests be commenced by a verified petition that is to be filed and served to the contestee within five days after the ballot title is set. 1-11-203.5(2). The statute instructs the district court to adjudicate the contest on the basis of "the requirements of the state constitution and statutes" and directs the court to correct the ballot title accordingly in its order. 1-11-203.5(3). Thus, the statute clearly time-bars all contests to the form or content of the ballot title, whether the contest to the form or content is based on statute or the constitution.
Article X, section 20 of the Colorado Constitution contains many requirements that govern the procedures of elections involving taxes and many that address the substantive limits of ballot issues,[10] but only a few of *464 those govern the form or content of the ballot issue and even fewer govern the form or content of the ballot title itself, which, as noted above, refers only to the heading of the ballot issue and the question presented to the voters.
Indeed, only two requirements in article X, section 20 relate to the ballot title. One relates to the order of the ballot title: clause 3(b) states that "[t]itles shall have this order of preference: NOTICE OF ELECTION TO INCREASE TAXES/TO INCREASE DEBT/ON A CITIZEN PETITION/ON A REFERRED MEASURE." The other, found in clause 3(c), relates to syntax and diction: "Ballot titles for tax or bonded debt increases shall begin, SHALL (DISTRICT) TAXES BE INCREASED (first, or if phased in, final, full, fiscal year dollar increase) ANNUALLY ... ? or "SHALL (DISTRICT) DISTRICT DEBT BE INCREASED (principal amount), WITH A REPAYMENT COST OF (maximum total district cost), ... ?"
Because these two requirements address only the form or content of a ballot title governed by article X, section 20 of the Colorado Constitutionand not what that constitutional provision will substantively permit voters to approvethey appear to be within the purview of section 1-11-203.5. Further, because article X, section 20 is a self-executing provision, it provides no specific mechanism by which a person would make a form or content objection to the ballot title based on these requirements.
Section 1-11-203.5 is the exclusive procedure for all local ballot title contests and creates no exception to its procedure for claims based on Colorado Constitution article X, section 20. 1-11-203.5(5). Thus, there is no inherent conflict between that constitutional provision and section 1-11-203.5. City of Greenwood Village v. Petitioners for the Proposed City of Centennial, 3 P.3d 427, 440 (Colo.2000) ("To declare an act of the legislature unconstitutional is always a delicate duty, and one which courts do not feel authorized to perform, unless the conflict between the law and the constitution is clear and unmistakable.") (internal quotation marks omitted).[11] Indeed, the requirements of section 1-11-203.5, as noted above, were created specifically with the other requirements of Colorado Constitution, article X, section 20, in mind. For these reasons, we conclude that Cacioppo has failed to show how section 1-11-203.5 conflicts with the Colorado Constitution.
Additionally, we hold that the five-day time limit imposed by section 1-11-203.5 is also not "manifestly so limited as to amount to a denial of justice." Dove v. Delgado, 808 P.2d 1270, 1273 (Colo.1991) (quoting Oberst v. Mays, 148 Colo. 285, 292, 365 P.2d 902, 905 (1961)). Indeed, the legislature appears to have carefully considered all the time requirements imposed on election officials by various statutory and constitutional provisions and carefully balanced those responsibilities with the rights of voters to contest impending elections. Because the legislature is generally trusted with what timelines are reasonable for statutes of limitations, Mishek v. Stanton, 200 Colo. 514, 518, 616 P.2d 135, 138 (1980), and because Cacioppo has failed to prove beyond a reasonable doubt that those timelines are manifestly unreasonable, we defer to the legislature's wisdom in this instance. See State ex rel. Labedz v. Beermann, 229 Neb. 657, 428 N.W.2d 608, 615 (1988) ("Although certainly *465 short, the Legislature's specification of a 10-day limitation [on challenges to the secretary of state's denial of an initiative election] ... seems, upon reflection, neither foolish nor contrary to other procedures provided ... [;] the preparation of a general election ballot is a complicated, time-consuming process ... for which the law must allow ample time.").
Because we uphold the constitutionality of section 1-11 203.5, we now proceed in greater detail to determine whether Cacioppo's claims relate to the ballot title's form or content.
IV. Determining Whether a Contest to a Ballot-Title Concerns the Substance or the Form or Content of the Ballot Title
We agree with Cacioppo that section 1-11-203.5 does not time-bar a constitutional challenge to the substance of an approved ballot issue. For purposes of defining "substance" as it pertains to this question, we determine that a matter involves the substance of a ballot issue if it relates to the language in the ballot title itself (specifically, the submission clause) and if it is such that it would be legally impossible for the court adjudicating the ballot title contest to reform or reword the ballot title ascontemplated by the statuteto any constitutionally or statutorily acceptable level. Stated differently, the contest involves the substance of the ballot issue if, regardless of any contest filed before the election, the ballot issue as approved cannot be upheld under the laws or constitution of the state. See, e.g., Evans v. Romer, 882 P.2d 1335, 1350 (Colo.1994); affd on different constitutional grounds, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (overturning, due to a conflict between the voter-approved law and the U.S. Constitution, an election on an initiative that would have barred, by state constitution, laws protecting individuals from discrimination based on sexual orientation). If the claim alleges that the ballot issue as passed cannot stand under the laws of this state, it is substantive in nature and thus not subject to the time requirements of either section 1-11-203.5 or section 1-11-213, which governs the time for appeal concerning challenges to election results.
Cacioppo asserts that all of his claims concerning the ballot issue are substantive because they derive from constitutional mandate. The District argues that they are all time-barred by section 1-11-203.5 because each of the claims addresses the form or content of the ballot title. To determine whether Cacioppo's suit against the District was indeed time-barredand thus, to determine whether we may review the district court's order addressing the merits of Cacioppo's contestwe must first review each of the claims and determine whether they: (a) relate to the form or content of the ballot title; (b) raise doubts only about the results of the election; or (c) address the substance of the ballot issue itself. Accordingly, we analyze each of his claims in turn.

A. Full Fiscal Year Disclosure Required in Ballot Title
Cacioppo's first claim alleges that because the ballot issue proposed a "phased-in" tax increase, article X, section 20, clause (3)(c) of the Colorado Constitution required the ballot titles submission clause to disclose the "final... full fiscal year dollar increase" instead of the "first ... full fiscal year dollar increase." Because the trial court concluded that this claim related to the substance of the ballot issue and not the form or content of the ballot title, it heard evidence on this matter. Because it determined that the tax increase was not a "phased-in" tax increase, it ruled in favor of the District on the merits. While we do not specifically take issue with the trial court's conclusion, we conclude that the claim involved only the form or content of the ballot title and, therefore, that it was not appropriate for the court to hear evidence on the claim outside the five-day limitation of section 1-11-203.5.
As noted above, clause (3)(c) of article X, section 20 of the Colorado Constitution states that "[b]allot titles for tax or bonded debt increases shall begin, SHALL (DISTRICT) TAXES BE INCREASED (first, or if phased in, final, full fiscal year dollar increase) ANNUALLY ...?" Thus, for all tax increases except those that are "phased-in," *466 the taxes first full fiscal year dollar increase is required to be in the ballot title; for a phased-in tax, the final full fiscal year dollar increase. The District's ballot title asked voters, "SHALL THE EAGLE COUNTY SCHOOL DISTRICT RE-50J TAXES BE INCREASED $3,115,827 ANNUALLY AND BY SUCH AMOUNTS AS ARE RAISED THEREAFTER BY THE IMPOSITION OF A MILL LEVY WITHOUT LIMITATION AS TO AMOUNT OR RATE ... AS PROVIDED BY LAW ... ?"
Cacioppo argued that the tax increase was phased-in. The District countered that the ballot issue called for an increase of $3,115,827 for the first year and that any increase thereafter was limited by statute. The trial court heard expert testimony concerning the nature and definition of a so-called "phased-in" tax as well as testimony relating to the District's intent regarding the tax and concluded that because there were no set incremental increases to be "phased-in" by the Districtrather, increases, if any, are determined by statutory formulathat the ballot title was appropriately worded.
The trial court's inquiry into the matter, though untimely, is the kind of proceeding contemplated by section 1-11-203.5. First, the claim clearly involves the form or content of the ballot title. Indeed, the pertinent language of Colorado Constitution, article X, section 20, clause 3(c) refers only to the wording and order of the ballot title and not to the substance of what voters can approve. Cacioppo does not dispute that the District could have asked voters to approve a phased-in tax in any certain amount, only that it proceeded to do so in an illegal fashion.
Second, the trial court heard evidence about the tax increase and concluded that it did not constitute a "phased-in" tax. Thus, had the trial court concluded the tax increase was "phased-in," it had evidence at its disposal to allow it to accurately reform and reword the ballot title to conform to clause 3(c) of article X, section 20 of the Colorado Constitution; the court could have replaced the $3,115,827 figure with the figure for the final full fiscal year increase. Because this type of inquiry lends itself to the summary adjudication provided in section 1-11-203.5, the claim did not involve the substantive limits of the ballot issue itself.
In summary, because Cacioppo's first claim alleged a form or content defect with the ballot title and because the alleged defect could have been corrected by the trial court following a summary adjudication under section 1-11-203.5, the claim was required by section 1-11-203.5 to be brought within five days of the District's setting of the ballot title. Because it was not, and because Cacioppo has failed to show any cause why it was not, we conclude that the claim was time-barred by section 1-11-203.5. See City of Glendale v. Buchanan, 195 Colo. 267, 578 P.2d 221, 223-24 (1978) (noting that where "the general assembly has provided procedures for challenging [a] ballot title prior to elections," invalidating an election on that basis "would be costly and disruptive, and cannot be justified unless good cause is shown why no challenge was made before the election") (internal citations omitted).

B. Ballot Issue Ambiguity
Cacioppo next argues that by asking voters if taxes should be increased "$3,115,827 ANNUALLY," the ballot issue was susceptible to two different interpretations: (1) that the District may increase taxes by $3,115,827 the first year and thereafter by statutorily calculated increments or (2) that the District may increase taxes by $3,115,827 each year indefinitely. He bases his argument on the ambiguity of the word "annually" in the ballot title. Cacioppo does not allege a constitutional or statutory bar to that interpretation; he claims instead that if the District did interpret the ballot issue to allow an indefinite year-by-year $3,115,827 increaseand did levy such an increasethat they misled voters into believing that there would only be an initial increase of $3,115,827, since interpretation (1), above, he claims, is the more reasonable one. Because there is no claim that the District has levied a tax in accordance with interpretation (2), and because Cacioppo does not claim that the mere susceptibility to this interpretation alone renders *467 the ballot issue illegal, we presume he seeks declaratory relief only on this claim.[12]
The trial court refused to address this issue, ruling that the claim was not ripe for decision. We similarly decline to address this issue for two reasons. First, because the District has not applied any interpretation to the mill levy increase other than the one it purported to, this claim asks this court to answer a hypothetical question about possible future interpretations to the law, which we cannot do. Second, article X, section 20, clause 3(c) of the Colorado Constitution required the ballot title to be worded as it was, including use of the term "annually" immediately following the tax increase figure. Because Cacioppo has not filed a facial challenge to that constitutional provision, we decline to address the constitutionality of the ballot titles wording.

1. Justiciability
Cacioppo asks us to declare that the tax increase at issue in this case cannot be interpreted to permit a year-by-year increase by the District of $3,115,827. Importantly, actions for declaratory judgment are meant "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." XX-XX-XXX, 5 C.R.S. (2003). A court's jurisdiction exists in such actions "only if the case contains a currently justiciable issue or an existing legal controversy, rather than the mere possibility of a future claim." Bd. of County Comm'rs. v. Park County Sportsmen's Ranch, LLP, 45 P.3d 693, 698 (Colo. 2002). A declaratory judgment action requires the plaintiff to assert present and cognizable rights and "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." Farmers Ins. Exch. v. Dist. Court, 862 P.2d 944, 947 (Colo.1993). No court can appropriately adjudicate a mattereven one for declaratory judgment"in the absence of a showing that a judgment, if entered, would afford the plaintiff present relief." Id. Above all, there must be a present and actual legal controversy and "not a mere possibility of a future legal dispute over some issue." Id. at 948; see also Bickel v. City of Boulder, 885 P.2d 215, 234 (Colo.1994) (holding, in a case involving possibly future illegal action permitted by a bond initiative, that "this court is not empowered to give advisory opinions based on hypothetical fact situations") (internal quotation marks omitted).
Here, there is no allegation that the District has attempted to increase the mill levy beyond the initial $3,115,827 in the first full fiscal year. Cacioppo was fearful of this possible interpretation even before the election and wrote to Strakbein, the District's Finance Director, who assured him that the District had no intention to raise taxes over $3 million each year, despite any alternative interpretation of the ballot issue. Moreover, the District insists in this appeal that the tax increase is not susceptible to the alleged interpretation and that it has no designs to raise taxes by over $3 million each year. Thus, Cacioppo asks us to interpret and declare the limits of the tax increase based on the hypothesis that the District may at some future point attempt to raise taxes by over $3 million each year indefinitely. Because there is no existing controversy regarding the limits of the tax increase, we conclude that this issue is not justiciable and we decline to address it. See In re Proposed Initiatives, English Language Education, 44 P.3d 213, 215-16 (Colo.2002) ("We have only a limited role in ballot-title proceedings. In general we will not interpret or construe the future legal effects of a proposed initiative.").

2. Ambiguity of the term "Annually"
Additionally, we note that the language to which Cacioppo objects is mandated by clause 3(c) of article X, section 20 of the Colorado Constitution. The ballot issue pertinently reads: "SHALL [THE DISTRICT] TAXES BE INCREASED $3,115,827 ANNUALLY... ?" Clause 3(c) requires that: "Ballot titles for tax or bonded debt increases shall begin, SHALL (DISTRICT) TAXES BE INCREASED (first ... full fiscal year dollar increase) ANNUALLY ... ?" Thus, the ballot issues diction is constrained by the *468 very provision Cacioppo seeks to enforce. Because Cacioppo chose not to challenge the requirements of clause 3(c), we decline to address the matter further.

C. Notice Contained Incorrect Financial Data
Cacioppo further argues that the ballot issue was unconstitutional because the notice required by article X, section 20, clause 3(b) of the Colorado Constitution that accompanied the ballot title contained incorrect financial data.[13] Clause 3(b) requires that notices be sent to voters no later than thirty days before the election. Among other information required to be included in the notice sent to voters is "the estimated or actual total of district fiscal year spending for the current year and each of the past four years, and the overall percentage and dollar change." Colo. Const. art. X, § 20, 3(b)(ii).
The notice that was sent to voters stated the following:
Actual historical and current estimated fiscal year spending information:

 Year Fiscal Year Spending
 ---- --------------------
 1996-97 (actual) $26,308,412
 1997-98 (actual) $27,234,253
 1998-99 (actual) $26,316,661
 1999-2000 (actual) $27,608,603
 2000-01 (estimated) $29,766,182

Overall percentage change in fiscal year spending over the five year period from 1996-97 through 2001-01: 13%
Overall dollar change in fiscal year spending over the five year period from 1996-97 through 2000-01: $3,457,770
Estimated 2001-02 fiscal year spending without taking into account the tax increase authorized by the ballot proposal: $33,618,907
Estimated 2002 tax increase authorized by the ballot proposal: $3,115,827.
Cacioppo assertsand the District agreesthat the notice failed to strictly comply with clause 3(b)(ii) of article X, section 20 of the Colorado Constitution because the District's five-year comparison did not include the District's then current fiscal year, which would have been July 1, 2001, through June 30, 2002, but instead included the District's spending for its then previous fiscal year, July 1, 2000, through June 30, 2001. The notice does contain the required estimated current fiscal year spending ($33,618,907), but does so below the year-by-year comparison. Because the notice included the comparison of the wrong five-year period, the notice provided an erroneous overall percentage change in fiscal spending proposed by the tax increase (13% instead of 23%) and an erroneous overall dollar change ($3,457,770 instead of $6,384,654).
Not only does Cacioppo claim that the notice failed to strictly comply with clause 3(b), he alleges that the District intentionally misled voters into voting for an increase that appeared to be smaller than it was. Thus, he argues that the election should be overturned on this basis.
The trial court recognized, however, that the notice does contain the required estimated current fiscal year spending. It noted that while the overall percentage and dollar amount increases were incorrect, the voters had all the required information thirty days before the election, and could have made their own conclusions about the actual percentage and dollar amount increases. Further, Strakbein, who completed this portion of the notice for the District, admitted her error and testified that she simply misread the constitution and believed that current fiscal year spending meant the spending for that calendar year. Based on this testimony, the trial court concluded that there was no intent to mislead voters and that the District had substantially complied with all constitutional requirements. It therefore refused to overturn the election on these grounds.
Cacioppo has appealed that ruling on the merits and the District has cross-appealed the ruling on the grounds that this claim is time-barred by section 1-11-203.5. However, because this claim goes to the information provided in the constitutionally required notice *469 and not the ballot title, we determine that section 1-11-203.5 is inapplicable and does not bar the claim. Indeed, because the notice is not required to be sent to voters until thirty days prior to the election, it would be impossible for a person to object to information contained in the notice within five days of the ballot title's setting, as section 1-11-203.5 requires.
We note, however, that Cacioppo now challenges a ballot issue based on information contained in a notice that he and other voters had access to before the election. And, he challenges the results of the ballot issue based on the allegedly misleading nature of the notice. He does not argue that the District is without legal or constitutional authority to raise the tax, only that it improperly persuaded voters to approve the tax increase. Thus, the challenge does not concern the substance of the ballot issue.
Accordingly, we conclude that this particular claim was time-barred by section 1-11-213(4), which requires those seeking to contest the results of a ballot issue election to file "a written statement of intent to contest the election" within ten days after the official survey of returns.[14] Because Cacioppo filed this contest well past that ten-day window, the trial courtand now this courtwas and is without jurisdiction to hear the claim. Cf. Bickel, 885 P.2d at 227 (in a case where the contest was made before the election, holding that courts may overturn an election only where a ballot issue fails to substantially comply with article X, section 20 of the Colorado Constitution).
D. Purported Purpose of Ballot Issue Was Misleading
Cacioppo finally argues that the ballot issue election should be overturned because the District intentionally misled voters into thinking that they were voting solely for a "cost-of-living" increase when part of the tax increase was intended to be used for a "performance pay program." Cacioppo asserts that the results of the election were wrongfully obtained by the District because the ballot title's only stated purpose for the tax increase was to provide a cost-of-living increase for employees.
The ballot title pertinently reads:
SHALL THE EAGLE COUNTY SCHOOL DISTRICT RE-50J BE INCREASED $3,115,827 ANNUALLY ... FOR THE PURPOSE OF PROVIDING THE DISTRICT WITH AN ANNUAL SUPPLEMENTAL COST OF LIVING ADJUSTMENT AS AUTHORIZED BY THE SCHOOL FINANCE ACT OF 1994...?
Below the ballot title, the notice that went out to voters includes comments filed in favor of the proposal by the District. Those comments include the following statement:
Of the $3.1 million raised by this measure, two-thirds will go toward a general cost-of-living pay increase for all teachers and staff, and one-third will support a performance pay program to reward teachers for outstanding student achievement.
Cacioppo does not allege that the District lacks the authority under the ballot issue to divert some of the increased revenue away from the cost-of-living increase to a performance pay program. He claims instead that by excluding that information from the ballot title itself, the District intentionally misrepresented the true purpose of the ballot issue. Thus, he argues, the election should be overturned on that basis.
Similar to the preceding claim, however, we note that because funding of the performance pay program was mentioned in the constitutionally required notice, Cacioppo's objection is based on information that was available to him and all other Eagle County voters prior to the election. Thus, the claim concerns the means through which the District obtained the election results and not the substantive limits of the ballot issue itself. Because the claim ultimately depends upon information included in the notice and addresses *470 matters beyond the form or content of the ballot title, we determine that it is not time-barred by section 1-11-203.5.
However, because it does not involve the legality or the constitutionality of the ballot issue's substance, and instead concerns only the means through which election results were obtained, we conclude that the claim is subject to the time limits of section 1-11-213.4, which, as explained above, require a challenge to election results to be filed within ten days after the official survey of returns. Because this claim was not filed within that timeframe, we, as well as all other courts, are without jurisdiction to address the claim.

V. Attorneys Fees
Cacioppo also asserts that he is entitled to attorneys fees and costs under article X, section 20, clause (1) of the Colorado Constitution. That provision provides that "[s]uccessful plaintiffs are allowed costs and reasonable attorney fees, but a district is not unless a suit against it be ruled frivolous." Colo. Const. art X, 20, (1). Because Cacioppo is not a successful plaintiff in this matter, we conclude that the constitution does not afford him any attorney's fees and costs.

VI. Conclusion
We affirm the decision of the trial court declining to overturn the election. We conclude that section 1-11-203.5 is constitutional and precludes claims related to the form or content of a school district ballot title unless those claims are asserted within five days of the setting of the ballot title by the School Board. We further conclude that section 1-11-213 operates to bar any claims that challenge the results of an election for a ballot issue and that are not brought within ten days of the official survey of election results. We hold that all of Cacioppo's claims, save one that is not now justiciable, either relate to form and content, or to the manner in which the election results were obtained, and were therefore time-barred. Since Cacioppo did not prevail in this action, we also uphold the trial court's decision denying him attorney's fees.
NOTES
[1] § 1-1-104(2.3), 1 C.R.S. (2003) ("`Ballot issue' means a state or local government matter arising under section 20 of article X of the state constitution, as defined in sections 1-41-102(4) and 1-41-103(4), respectively." Cf. § 1-1-104(2.7), 1 C.R.S. (2003) ("`Ballot question' means a state or local government matter involving a citizen petition or referred measure, other than a ballot issue."). While the notice of the ballot issue sent to voters incorrectly referred to the ballot issue as a ballot question, that error is immaterial to this opinion.
[2] § 31-11-103(5), 9 C.R.S. (2003) ("`Title' means a brief statement that fairly and accurately represents the true intent and meaning of the proposed initiative, referendum, or referred measure.").
[3] § 31-11-103(4) ("`Submission clause' means the language that is attached to the title to form a question which can be answered by `yes' or `no.'").
[4] When the District's motion was initially filed, the sitting judge was out on medical leave and a visiting judge entered summary judgment in favor of the District. That order was vacated on October 25, 2002, by the presiding judge after Cacioppo filed a motion to reconsider.
[5] The bill was supported by a coalition of statewide associations, including the County Clerks Association, the Colorado Municipal Clerks Association, and the Colorado Association of School Executives. House Hearing (statement of Rep. Allen); Senate Hearing (statement of Geoff Wilson of the Colorado Municipal League); Senate Hearing (statement of Joan Fitzgerald of the Legislative Committee of the Colorado County Clerks Association); Senate Hearing (statement of Karen Goldman of the Colorado Municipal Clerks Association). The bill was also promoted by the Secretary of State's Office. Senate Hearing (statement of Donnetta Davidson of the Secretary of State's Office). The identified purpose of the bill was to improve statewide and local election procedures, and to respond to past difficulties that election officials had encountered. Senate Hearing (statement of Sen. Thiebaut).
[6] House Hearing (statement of Rep. Allen); Senate Hearing (statement of Senator Thiebaut).
[7] Section 31-11-101 states:

It is the intention of the general assembly to set forth in this article the procedures for exercising the initiative and referendum powers reserved to the municipal electors in subsection (9) of section 1 of article V of the state constitution. It is not the intention of the general assembly to limit or abridge in any manner these powers but rather to properly safeguard, protect, and preserve inviolate for municipal electors these modern instrumentalities of democratic government.
See also Colo. Const. art. V, § 1, (9), which pertinently states:
The initiative and referendum powers reserved to the people by this section are hereby further reserved to the registered electors of every city, town, and municipality as to all local, special, and municipal legislation of every character in or for their respective municipalities. The manner of exercising said powers shall be prescribed by general laws; except that cities, towns, and municipalities may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation.
[8] The parties stipulated that the term "set" referred to the certification of the ballot title under section 1-5-203, which is to occur no later than 55 days before the election. Because that construction is not consistent with the timelines or purpose of the statute, we decline to adopt it.
[9] We note here, too, that because the parties stipulated that the District met all deadlines in this election, and because each party agreed to interpret "set" under section 1-11-203.5 as "certify" pursuant to section 1-5-203, the issue of a proper construction of the term "set" was not briefed for this appeal.
[10] For purposes of article X, section 20 of the Colorado Constitution, "`[b]allot issue' means a non-recall petition or referred measure in an election." Colo. Const. art. X, § 20, (2)(b). There is no dispute in this case that this definition applies to the ballot issue here.
[11] Cacioppo appears also to argue that section 1-11-203.5 conflicts with article X, section 20 of the Colorado Constitution because, he asserts, that constitutional provision provides a four-year statute of limitations in which to bring suit based on ballot titles or ballot issues. For this proposition, he cites to article X, section 20, clause 1, which provides that "[r]evenue collected, kept, or spent illegally since four full fiscal years before a suit is filed shall be refunded with 10% annual simple interest from the initial conduct." We disagree with Cacioppo on this point because the plain language of that provision provides a remedy for money collected through illegal ballot issues; it does not address the time within which a plaintiff may bring suit to declare the ballot issue illegal. See Prop. Tax Adjustment Specialists, Inc. v. Mesa County Bd. of Comm'rs, 956 P.2d 1277, 1281 (Colo.1998) ("In order to protect citizens from improper or unwarranted taxes or spending increases, Colo. Const. art X., 20, also provides relief to citizens for taxes imposed or revenue spent contrary to its procedures."). Thus, we see no conflict between Colorado Constitution, article X, section 20, clause 1 and section 1-11-203.5.
[12] The complaint sought both injunctive and declaratory relief on all claims.
[13] As noted earlier, clause 3(b) requires that a notice be sent to voters no later than thirty days prior to the election. That notice includes the ballot title itself as well as other required financial data. Colo. Const. art. X, § 20, 3(b).
[14] This timeline is found in part 2, article 10 of the UEC, and is entitled "SURVEY OF RETURNSNONPARTISAN ELECTIONS." § 1-10-203(1), 1 C.R.S. (2003) ("No later than seven days after an election, the canvass board shall certify to the designated election official the official abstract of votes cast for all candidates, ballot issues, and ballot questions in that election.").