No. 17,323.

TOM McGUIRE v. ROLF H. LUCKENBACH.

(281 P. [2d] 997)

Decided March 28, 1955. Rehearing denied April 25, 1955.

Mr. FRED W. MATTSON, SR., Mr. A. B. MATTSON, Mr. GEORGE K. THOMAS, for plaintiff in error:

Mr. GUY K. BREWSTER, for defendant in error.

*En Banc.*

Mr. Chief Justice Alter delivered the opinion of the Court.

Tom McGuire brought an action against Rolf H. Luckenbach to recover a judgment in the sum of $134,464.02 allegedly due him for work and labor performed under a contract entered into between himself and defendant on October 1, 1944. The cause was tried to a jury to which was submitted, without objection, the sole question of the binding force and effect of contracts entered into between the parties. The jury returned its verdict, finding that the contracts were not binding upon defendant, whereupon the court entered its judgment in favor of defendant and against plaintiff. Plaintiff brings the cause to this Court by writ of error seeking a reversal of the trial court's judgment.

We will herein refer to McGuire by name or as plaintiff; to Moynahan and Brandt by name; to Luckenbach by name or as defendant.

Plaintiff's counsel, in their brief, in summarizing their argument, state:

"This writ of error involves the application of the parol-evidence rule that when the parties reduce their agreement to writing, in such form as to import a valid legal obligation, complete and unambiguous in its terms, with no uncertainty as to the extent of its obligations, it is, in the absence of fraud, accident or mistake, conclusively presumed that the writing constitutes the whole agreement of the parties, and that no extrinsic evidence of prior or contemporaneous negotiations is admissible to vary or qualify the written contract, either in its terms or legal import."

We believe that it will be unnecessary to detail the pleadings in the case for the reason that our decision can be readily understood by referring to such evidence only as is germane to counsel's summary.

It appears from the record that A. E. Moynahan is a graduate mining engineer of long experience in mining

operations in Colorado and elsewhere; that Tom Mc-
Guire has had extensive experience in developing na-
tural resources and, since 1922, has been engaged in min-
ing operations as owner and lessee and has, on occasion,
employed Moynahan as mining engineer in connection
with his mining operations; Rolf H. Luckenbach is the
son-in-law of A. E. Moynahan; is engaged in house build-
ing; has had some experience in the garage business, and
at some time prior to October 1, 1944, had managed the
business end of a mining lease for the London Extension
Mining Company; that Anne M. Brandt is an attorney
and counselor-at-law, has officed in Mr. McGuire's suite
for a number of years, and is interested in mining opera-
tions both as lessee and owner.

There is evidence in the record disclosing that Messrs.
McGuire and Moynahan had been acquainted for many
years prior to October 1, 1944. On August 14, 1943, Moy-
nahan wrote McGuire, advising that he could secure
leases on the Mineral Park and Agripa Placer Claims in
Park county, Colorado, and that he believed, with $1,000
advanced, he could open up an ore body on these prop-
erties. In this letter Moynahan agreed that plaintiff
should have fifty per cent of any profits arising out of
the operation or sale of the leases or property. Plaintiff
accepted Moynahan's offer by attaching his signature to
the letter; thereupon Moynahan proceeded to acquire
leases on said properties, but in so doing, and at the re-
quest of plaintiff, took the leases, dated October 10, 1944,
in the name of A. M. Brandt. In the operation of these
properties, after the expenditure of the $1,000 advanced
by McGuire under the agreement evidenced by the let-
ter of August 14, 1943, McGuire advanced approximately
$4,000 more in the development of the property, and
then was informed by Moynahan that indications were
that the ore body continued in the adjoining Webber
mining property and suggested that a lease thereon be
obtained, with which suggestion McGuire agreed. Moy-
nahan secured a sublease on the Webber property, dated

August 10, 1944, taking the same in the name of defendant. It then was agreed between plaintiff and Moynahan that the Mineral Park and Agripa placers and Webber claims should be thereafter operated as a unit, and in furtherance of this plan A. M. Brandt, under date of October 25, 1944, sublet the Mineral Park placer claim to defendant, in which sublease defendant agreed to discharge Brandt's obligation to her lessor, and, in addition, agreed that he would pay her fifty per cent of the net profits arising from the operation under the sublease. Defendant agreed to pay Otis, from whom he had acquired a sublease on the Webber property, a graduated, overriding royalty.

Defendant thus became a sublessee of the Mineral Park and Agripa placers and the Webber group under leases to Brandt and Otis, and these properties, by virtue of an agreement between plaintiff and Moynahan, were to be operated as a unit.

In the preparation of the contract of October 1, 1944, plaintiff, defendant and Moynahan participated, and after its completion and before defendant executed it, he objected thereto because its terms were too binding upon him. Both plaintiff and Moynahan allegedly told him that his signature thereto was only a matter of form and that he would not be bound personally thereby for the operating costs; that the contract was merely a matter of convenience to them in connection with their unit mining operations, whereupon he signed it.

Plaintiff, Moynahan and defendant discussed the plan of financing their mining operations, and discarded the incorporation thereof because of income taxes. Ultimately it was determined to finance the project by the issuance of "Receipts and Agreements" under which persons would purchase units in the mining project with an agreement to refund money and a certain percentage of the net profits to be repaid, and defendant was to execute the "Receipts and Agreements."

Moynahan raised between $80,000.00 and $90,000.00 on

the sale of "Receipts and Agreements"; plaintiff between $11,000.00 and $12,000.00, and defendant approximately $3,000.00, upon the sale of which he was paid a commission.

All the books and records pertaining to the mining operations, as well as the sale of "Receipts and Agreements," were kept in plaintiff's office and never were in defendant's possession. It is undisputed that defendant had nothing whatever to do with the unit mining operations which were carried on under the direction and supervision of Moynahan. It also is undisputed that plaintiff, in the performance of his contract of October 1, 1944, earned the sum of $245,377.78, and that he received thereon $110,913.76, leaving the balance for which the suit was maintained. Defendant specifically denied that he had any interest in the unit mining operations; however, on June 1, 1946, Moynahan wrote plaintiff the following letter:

"Mr. Tom McGuire,
First National Bank Building,
Denver, Colorado
Dear Tom:

Reference is made to our conversations and letters of August 13 and 14, 1943, relative to the Mineral Park project in Park County, Colorado.

At that time we agreed each with the other that should any profits arise either directly or indirectly from the operation or sale of the leases or properties which subsequently became known as the 'Mineral Park Account,' one to the other would give fifty (50%) per cent of the net profits arising to him therefrom.

Subsequently you entered into an operation contract with Rolf H. Luckenbach, the lessee of the properties included in the above project, and to date I have expected to receive fifty (50%) per cent of any net profits accruing to you from that contract. However, circumstances which we have discussed fully, have arisen, and you have made substantial advances to the furthering of the

project. In consideration of these advances, I hereby agree that I shall receive thirty-five (35%) per cent instead of fifty (50%) per cent of the net profits which may accrue to you from the above mentioned operating contract with Rolf H. Luckenbach, Lessee.

This will be binding upon my heirs, successors and assigns.

If this meets with your approval, your signature on the line marked 'Accepted' below, will constitute this agreement between us.

Very truly yours,<br>(Signed) A. E. Moynahan

ACCEPTED:
(Signed) Tom McGuire."

Plaintiff objected strenuously to all evidence offered by defendant with reference to his liability upon the contract of October 1, 1944, stating that it was in violation of the parol evidence rule. The court, in its ruling, stated:

"I am admitting it under the allegation in the affirmative defenses, the main allegation, which is that there was no contract between the parties and this was an instrument of convenience for the benefit of two other people. That is to be found in this allegation, and I will attempt to have him put on his evidence in accordance therewith. No. 1 of his defenses states that he admits he affixed his signature, but alleges he did so as hereinafter set forth in defendant's second and third defenses. Then we find in that defense, stripped of its verbiage, an allegation that there was no contract between the parties."

We thus are to determine whether evidence to establish that there was no valid subsisting contract between the parties thereto is a violation of the parol-evidence rule, as contended by counsel for plaintiff.

In our opinion in *Light v. Rogers*, 125 Colo. 209, 242 P. (2d) 234, we held:

"It is an elementary rule of law, requiring no citation

.of authority, that, aside from specific exceptions with none of which we are here concerned, parol evidence will not be permitted to modify, add to, contradict or change the provisions of a written instrument unless such contract [instrument] be ambiguous within itself." *Oriental Refining Co. v. Hollenback,* 125 Colo. 77, 240 P. (2d) 913.

We believe it to be a well-settled rule in Colorado and elsewhere that in an action on a contract executed by the parties thereto extrinsic evidence is admissible to establish that the parties did not intend it to be an exclusive, authoritative memorial of their agreement, and where they have previously agreed that their written promises are not to bind them, that agreement controls, and no legal obligations whatever arise under the contract. Such a contract is a mere sham, lacking all legal efficacy, and extrinsic parol or other extrinsic evidence will always be received on the determination of that issue. *Bourke v. Van Keuren,* 20 Colo. 95, 36 Pac. 882; *Hurlburt v. Dusenbery,* 26 Colo. 240, 57 Pac. 860; *Creek v. Lebo Investment Company,* 85 Colo. 357, 276 Pac. 329; *Oppegard v. Oppegard,* 90 Colo. 483, 10 P. (2d) 333; *McCaffrey v. Mitchell,* 98 Colo. 467, 56 P. (2d) 926; *Ball v. Wright,* 118 Colo. 410, 195 P. (2d) 739; *The Denver Brewing Company v. Barets,* 9 Colo. App. 341, 48 Pac. 834; *Roberts v. Greig,* 15 Colo., App. 378, 62 Pac. 574; *Divine v. Western Slope Fruit Growers Assn.,* 27 Colo. App. 368, 149 Pac. 841; *Burke v. Dulaney,* 153 U. S. 228; *Hamilton v. Boyce,* 234 Minn. 290, 48 N.W. (2d) 172; *In re Hicks & Son, Inc.,* 82 F. (2d) 277; *Danielson v. Bank of Scandinavia,* 201 Wis. 392, 230 N.W. 83; *Allen v. Marciano,* 79 R.I. 98, 84 A. (2d) 425; *Western National Ins. Co. v. Trent,* 69 Nev. 239, 247 P. (2d) 208; 4 Page on Law of Contracts, p. 3820, sec. 2176, et seq.; 9 Wigmore on Evidence (3d ed.), p. 30, sec. 2410; Restatement of the Law, Contracts, p. 74, sec. 71; Williston on Contracts (3d Rev. Ed.), p. 1808, sec. 630, et seq.; 20 Am.

340

Jur., p. 954, sec. 1093, et seq.; 32 C.J.S., p. 932, sec. 967,. et seq.

 There was competent evidence to support the jury's finding that, by agreement between the parties, the contract of October 1, 1944, was never intended to become a valid and enforcible contract between them; that it was executed by defendant on plaintiff's assurance that it would not be enforcible, according to its terms, against him. We hold that where, as in the instant case, the validity of the contract is in fact disputed, parol evidence is admissible, not to vary the terms of the contract, but to show that what appears on its face to be a valid, enforcible contract is, in fact, no such thing.

Accordingly, the judgment is affirmed.