In the Matter of the ESTATE OF Helen Sloan DANIELS, Deceased.

Robert S. AYRES, Petitioner,

v.

Marilee Neilson KING, Mae Belle Gentry, and Rae Kuykendall, Respondents.

No. 82SC70.

Supreme Court of Colorado, En Banc.

May 31, 1983.

As Modified on Denial of Rehearing July 11, 1983.

L.W. McDaniel, Durango, for petitioner.

James C. Anesi, P.C., Durango, for respondents.

LOHR, Justice.

We issued a writ of certiorari to review *In Re Estate of Daniels,* 643 P.2d 788 (Colo. App.1981), in which the Colorado Court of Appeals held that an inter vivos trust had been created by the decedent, Helen Sloan Daniels, prior to her death and was in effect when she died. The District Court of La Plata County had reached a contrary result after a trial without a jury. Because the evidence supports the trial court's ruling that the trust never came into being, we reverse the judgment of the court of appeals.

On November 12, 1974, Helen Sloan Daniels signed a trust agreement naming as equal residuary beneficiaries Katherine Ayres, Robert S. Ayres, Susan Ayres Davies, Mae Belle Gentry, Marilee Neilson King and Rae Kuykendall. Immediately thereafter, Daniels executed her will, which contained a clause devising the residue of her estate to "the then acting Trustee under a trust agreement executed by me as Settlor on November 12, 1974, prior to the execution of this Will."[1] The residuary clause

1. Article V of the decedent's will is the residuary clause and reads as follows:

*Disposition of Remainder of Estate*

*Section 1.* All the rest of my property I give to the then acting Trustee under a trust agreement executed by me as Settlor on November 12, 1974, prior to the execution of this Will. This property shall be added to the trust estate existing by reason of such agreement at the time of my death and be administered under its terms.

*Section 2.* If the trust created by said agreement is not in effect at my death, I give all the rest of my property to ROBERT S. AYRES if he survives me by thirty (30) days. If he does not so survive me, I give all the rest of my property to KATHERINE AYRES if she survives me by thirty (30) days or, if not, then to SUSAN AYRES DAVIES.

further provided that "[i]f the trust created by said agreement is not in effect at my death, I give all the rest of my property to ROBERT S. AYRES...." Susan Ayres Davies was designated as executrix in the will and as co-trustee with Daniels in the trust agreement.

Daniels died in Durango, where she had been a lifelong resident, on May 17, 1979, at the age of 79 years. After Daniels' will was admitted to probate, Robert S. Ayres filed a petition asking the court to declare the trust agreement void. King, Gentry and Kuykendall responded, requesting the court to uphold the agreement and demanding a trial by a jury of six persons. Thereafter, the executrix petitioned the court for instructions with respect to the disposition of property under the residuary clause in the will. Shortly prior to trial, Robert S. Ayres filed a motion to disallow trial by jury, and the trial court granted that motion.

The trial court held a single hearing on the two petitions and made extensive written findings of fact and conclusions of law. It found that the trust was not created during Daniels' lifetime because she lacked "the essential element of intent." The court concluded, therefore, that the trust agreement was not in effect at Daniels' death and that under the terms of the residuary clause in Daniels' will Robert S. Ayres is the "sole legatee" of her residuary estate. Trust beneficiaries King, Gentry and Kuykendall appealed, and the court of appeals reversed, holding that the trust was in effect at Daniels' death as a matter of law. Because the court ruled in favor of the trust beneficiaries on the ground that the trust was in effect, it did not express an opinion with regard to their contention that the trial court erred in denying their request for a jury trial. We granted certiorari to review the judgment of the court of appeals.

### I.

The court of appeals held that, under section 15–11–603, C.R.S.1973, the intention of the testator as expressed in her will

controls. It concluded that Daniels' will expressly states an intent that the remainder of her property pass according to the terms of the trust instrument if the trust is in effect at the time of her death. The court then stated that the issue for decision is not the settlor's intent, but whether the trust was in effect at the time of her death. We agree with the court of appeals that Daniels' will must be interpreted according to the applicable statutory rule of construction but disagree with that court's statement of the issue. The intention of Daniels as expressed in her will was that her residuary estate would pass to the trustee only if the trust was in effect when she died. The trial court ruled that the trust never took effect because the settlor lacked the intent to create the trust. The correctness of that conclusion is the issue upon which this case turns.

■ In order to create an express trust it is essential that the settlor intend that a trust come into existence. *In Re Estate of Brenner*, 37 Colo.App. 271, 547 P.2d 938 (1976); *In Re Estate of Granberry*, 30 Colo. App. 590, 498 P.2d 960 (1972); *accord Coriell v. Hudson*, 563 F.2d 978 (10th Cir.1977) (applying Colorado law); *In Re King*, 424 F.Supp. 117 (D.Colo.1975) (applying Colorado law). The settlor must manifest such intent by objective expressions such as written documents, words and conduct, and the settlor's subjective thoughts and beliefs are not relevant. *See A. Scott, Trusts* § 23 (1967); *In re King, supra.* Based on evidence of Daniels' conduct and statements before and after signing the trust instrument, the trial court found that she did not intend to create a trust, and that finding cannot be disturbed on review.

■ A principal witness at the hearing was Leonard Davies, a Denver lawyer who is married to Susan Ayres Davies, the executrix and designated co-trustee. According to Davies' testimony, the decedent, who was related to his wife and was a long-time friend, consulted him early in 1974 about an estate plan. Davies' practice did not include trust or estate matters. He agreed to represent Daniels, however, and engaged

another attorney to assist in drafting the necessary instruments and in advising the client. Davies paid the other lawyer for his services, and that lawyer had no contact with Daniels. Daniels reviewed several drafts and had many discussions with Davies before signing the trust agreement. Davies advised Daniels that the mere signing of the trust agreement would not activate it and that, before the trust could come into being, Daniels would have to fund it and appoint the co-trustee.[2] Davies testified that he gave such advice both before and after Daniels signed the trust instrument and the will. All of the conversations between Davies and Daniels, even after the trust agreement was signed, were based on the assumption that the trust did not exist and centered on Daniels' concern over whether a trust should be created.

Daniels signed the trust agreement and will in the offices of her Durango attorney. This attorney testified that Daniels asked his opinion about the estate plan but that he told her he did not know enough about her financial affairs or her wishes concerning the disposition of her property to comment. She then signed the documents but did not fill out the property schedules attached to the trust agreement. Those schedules were the only sections in the documents, other than the residuary clause of the will, that provided for the designation of property subject to the trust. She said she would place the original trust agreement in her safety deposit box, and the lawyer so noted on his copy of that document. While in the attorney's office, Daniels said that she intended to discuss the documents again with the lawyer who prepared them.

Daniels then went to Davies' office in Denver, according to his testimony, and returned the trust agreement to him "to wait for further directions on it." She took the will back to Durango and placed it in her safety deposit box. The will was found there soon after her death, and the trust agreement was later discovered among Davies' files.

Daniels never funded the trust. The trust agreement names Susan Ayres Davies as one of the trustees and provides a place for her signature, but she never signed it. Susan Ayres Davies testified that, although Daniels asked her to be the executrix of Daniels' estate, the decedent never mentioned the trust agreement or requested that Susan Ayres Davies act as co-trustee. There is no evidence that Daniels ever notified any of the beneficiaries of the existence of a trust. Davies testified that, during the course of Daniels' estate planning discussions with him, "finally the discussion centered around her desire to really dissipate her estate prior to her death through gifts . . . ." He further testified that Daniels did make some gifts during her lifetime, including stock of $50,000 value to Susan Ayres Davies a few months prior to signing the will and trust agreement.

As this summary of the evidence reflects, different aspects of Daniels' conduct may be focused upon to support opposite conclusions regarding her intent. Her signing of the trust agreement, in itself entirely regular, is a very strong outward manifestation of an intent to create the trust, but other significant evidence of her conduct and words both before and after signing the agreement support the trial court's decision. The trial court's conclusion, based on this conflicting evidence, that Daniels had no intent to create the trust is therefore binding upon us. *E.g., Whatley v. Wood,* 157 Colo. 552, 404 P.2d 537 (1965).

The respondent trust beneficiaries argue that, although Daniels was uncertain as to the desirability of the estate plan reflected by the trust and will, she understood the terms of the trust agreement when she signed it and by signing the documents must have intended to create the trust and incorporate it into the will. The respondents characterize the situation as one where Daniels intended to give effect to the

---

**2.** The accuracy of this advice is not relevant to the disposition of this case and we express no opinion about it.

trust, and did so, but later decided not to go through with it. The trial court specifically recognized, however, that the issue before it was not revocation of a valid trust but whether Daniels ever intended to create the trust. It held that she had no such intent and the record supports that decision.

The court of appeals appears to have predicated its opinion on the assumption that by signing the trust agreement Daniels necessarily intended that it be effective and that the question is whether it remained in effect until her death. This misconceives the issue, however. As Judge Tursi recognized in his dissenting opinion, intent is essential to the creation of a trust and, therefore, controls the central issue in this case of "whether the decedent created an effective trust during her lifetime." 643 P.2d at 790.

■ The dissenting judge noted that the trial court properly considered parol evidence on the issue of Daniels' intent. We have previously held that, absent ambiguity, fraud, duress, or mistake, extrinsic evidence of the settlor's intent regarding the meaning of trust terms in a written document may not be relied upon in construing those terms. *Denver National Bank v. Von Brecht,* 137 Colo. 88, 322 P.2d 667 (1958); *Brunton v. International Trust Co.,* 114 Colo. 298, 164 P.2d 472 (1945). However, evidence of the settlor's words and conduct is relevant to the issue of intent to create a trust, *Restatement (Second) of Trusts,* §§ 23 and 24 (1959), and such extrinsic evidence, when offered with respect to that intent, is not precluded by the parol evidence rule. *Porreca v. Gaglione,* 358 Mass. 365, 265 N.E.2d 348 (1970); *see A. Scott, Trusts* § 38 (1967); *cf. Exchange National Bank of Colorado Springs v. Sparkman,* 191 Colo. 534, 554 P.2d 1090 (1976) (parol evidence of subsequent conduct is admissible to show a modification of a written trust agreement).[3] The trial court properly con-

sidered such evidence and made the well-supported finding that Daniels never intended the trust to take effect.

## II.

The trust beneficiaries contend that they were entitled to have a jury consider the factual issue of the settlor's intent. The court of appeals did not need to address their claim that the trial court erred in denying their request for a jury trial because that court ruled in favor of the trust beneficiaries on the ground that the trust was effective. Since we reach the opposite conclusion, we are required to determine whether the trial court improperly denied the jury trial request.

Litigants are not entitled to a jury trial in civil cases as a matter of constitutional right. *Kaitz v. District Court,* 650 P.2d 553 (Colo.1982); *Federal Lumber Co. v. Wheeler,* 643 P.2d 31 (Colo.1981); *Gleason v. Guzman,* 623 P.2d 378 (Colo.1981) (and cases cited therein); *see Colo. Const.* Art. II, § 23. However, the right to a jury has been extended to certain types of civil actions by C.R.C.P. 38(a), *Setchell v. Dellacroce,* 169 Colo. 212, 454 P.2d 804 (1969), and by statutes, such as section 15–10–306, C.R.S.1973, relied on by the trust beneficiaries here. *See Parker v. Plympton,* 85 Colo. 87, 273 P. 1030 (1928) (the general assembly may provide for trial by jury of factual issues in civil actions). We believe that neither C.R.C.P. 38(a) nor section 15–10–306 provides the trust beneficiaries a right to a jury trial on the factual issue of intent in this case.

In considering whether an issue of fact must be tried by a jury as provided by rule or statute, the nature of the civil action as fixed by the complaint is determinative. *Kaitz v. District Court, supra; Gleason v. Guzman, supra; Setchell v. Dellacroce, supra.* The petition filed by Robert S. Ayres

---

3. In the area of contract law we have long recognized that parol evidence is admissible to show that a written agreement was subject to an oral condition precedent reflecting that the parties never intended the contract to become effective. *See Cosper v. Hancock,* 163 Colo.

263, 430 P.2d 80 (1967); *Witherspoon v. Pusch,* 141 Colo. 525, 349 P.2d 137 (1960); *Burenheide v. Wall,* 131 Colo. 371, 281 P.2d 1000 (1955); *McGuire v. Luckenbach,* 131 Colo. 333, 281 P.2d 997 (1955).

in the present action requests the trial court "to find that the said trust agreement is invalid and void and of no legal effect." The right to jury trial granted by C.R.C.P. 38(a) does not extend to actions to declare a trust invalid, but only to actions "for the recovery of specific real or personal property, ... or for money claimed as due on contract, or as damages for breach of contract, or for injuries to person or property." Moreover, the present action cannot be characterized as a "formal testacy proceeding" so as to entitle the trust beneficiaries to a jury trial under section 15–10–306. A formal testacy proceeding "is litigation to determine whether a decedent left a valid will." Section 15–12–401, C.R.S.1973. In this case, the opposing parties all agree to, and depend upon, the validity of the will to support their theories of recovery under it; the only contested issue is the status of the inter vivos trust which in no way affects the validity of the will.

Finally, in addition to the lack of statutory authority for the trust beneficiaries' position, we believe that an action to declare a trust invalid, like an action to establish or enforce a trust, invokes the equitable arm of the trial court's jurisdiction. *See Cree v. Lewis,* 49 Colo. 186, 112 P. 326 (1910); 5 J. Moore, *Moore's Federal Practice* § 38.11[6] at 38–82 to 38–83 (2d ed. 1982); 9 C.A. Wright and A.R. Miller, *Federal Practice and Procedure* § 2316 at 82 (1971). No right to a jury trial is recognized for equitable actions. *Kaitz v. District Court, supra; Federal Lumber Co. v. Wheeler, supra; Worchester v. State Farm Mutual Automobile Ins. Co.,* 172 Colo. 352, 473 P.2d 711 (1970).

We reverse the judgment of the court of appeals and direct that the trial court's judgment be reinstated.