Opinion by JUDGE J. JONES
¶ 1 A real estate developer, Everest Marin, L.P. (Everest), created a special district, the Marin Metropolitan District (District), as a vehicle for financing the infrastructure of a to-be-developed residential community known as the European Village. The District issued bonds to finance the development which were to be paid for by property taxes imposed on landowners within the District. A group of condominium owners who did not live in the European Village learned that their properties had been included in the District under suspicious circumstances. The condominium owners received no benefit from the European Village development, and had not been notified of, much less voted in, the elections to create the District and approve the bonds and taxes. Acting through their homeowners association, plaintiff Landmark Towers Association, Inc. (Landmark), they brought two actions; one to invalidate the creation of the District and the other-this case-to invalidate the approval of the bonds and taxes and to recover taxes they had paid to the District.
¶ 2 Following a bench trial, the district court in this case granted Landmark part of the relief it requested, ordering partial refund of taxes paid and enjoining the District from continuing to collect taxes from the Landmark condominium owners.
¶ 3 Defendants, UMB Bank (UMB), Colorado Bondshares (Bondshares), and the District, appeal the district court's rulings in favor of Landmark. Landmark cross-appeals the court's determination that its contest to the bond and tax election under the Taxpayer's Bill of Rights (TABOR) was time barred, and the court's alternative determination that the election complied with TABOR and applicable statutes.
¶ 4 We conclude that Landmark's contest of the bond and tax election is not time barred, and that the election violated TABOR and applicable statutes. We reject defendants' contentions that are not mooted by our determination that the election was invalid, and remand for further proceedings.
I. Background
¶ 5 The Landmark Towers are two condominium towers in Greenwood Village with retail space. 7677 East Berry Avenue Associates, *1130 LP, developed the Landmark Towers. Zachary Davidson was its managing partner. While the Landmark Towers were being developed from 2005 through 2007, about 130 buyers (Landmark buyers) entered into contracts to buy condominiums in the towers, paid $35,000 to $100,000 in nonrefundable deposits, and agreed to pay pro-rated taxes for the year at closing. The purchasers were required to close when the condominiums were completed. The purchase contracts did not name any special districts encompassing the Landmark Towers, but did contain a notice that special districts might be created and impose ad valorem property taxes.
¶ 6 Mr. Davidson was also the managing partner of Everest. Everest bought land near the Landmark Towers and intended to develop the site into a residential community called the European Village. To finance the development of the European Village, Mr. Davidson decided to create the District under Title 32, Article 1 of the Colorado Revised Statutes, and to include the Landmark Towers in the district to provide a sufficient tax base.
¶ 7 Mr. Davidson and five other organizers submitted a service plan for the District to Greenwood Village which said that the District would provide public infrastructure improvements to all property within the District. Greenwood Village approved the service plan pursuant to section 32-1-301, C.R.S.2015.
¶ 8 The service plan provided that the District would give notice of the creation of the special district to individuals under contract to buy Landmark condominiums before conveyance of title.[1] The service plan also provided that the District could issue up to $35,500,000 in general obligation bonds bearing an interest rate of as much as 12%, which would be paid over a thirty-year period.
¶ 9 The District's organizers filed a petition for organization with the district court, and the court set a hearing on the petition. At the hearing, the court entered an order directing that an organizational election be held for the District.
¶ 10 The organizers held an organizational election for the District. To become eligible electors under section 32-1-103(5)(a), C.R.S.2015, each of the six organizers executed option contracts with Everest to purchase undivided 1/20th interests in a ten-foot by ten-foot parcel in the District. The contracts purported to obligate the organizers to pay taxes on the parcels. The organizers held the organizational election on November 6, 2007, and approved the creation of the District. At the same time, the organizers voted to approve the issuance of bonds and to impose ad valorem property taxes to pay the bonds. The district court subsequently entered an order declaring the special district organized.
¶ 11 In 2008, the District sold $30,485,000 in general obligation bonds bearing an interest rate of 7.75% to Bondshares. The bonds had a twenty-year maturity date. UMB held the bond proceeds for the benefit of the District.
¶ 12 The District was authorized to withdraw funds from UMB by submitting requests for payment showing the allocation of that money to the public infrastructure in the European Village. Per the service plan, the bond funds were to be used only for public infrastructure work. In 2008, the District withdrew $8,000,000, the full amount available for initial withdrawal. Because Mr. Davidson was the managing partner of both Everest and the District, he had unsupervised access to the bond funds. Mr. Davidson misused a large portion of the funds.
¶ 13 In 2011, the Landmark buyers discovered facts indicating that the District had been formed through alleged misrepresentations to Greenwood Village and fraud on the district court. Landmark intervened in the case the District's organizers had opened to seek approval of the special district, and moved pursuant to C.R.C.P. 60(b)(2), (3), and (5) to set aside the district court's order approving the District. Landmark asserted fraud on the court, lack of jurisdiction to approve the special district, and invalidity of the order due to lack of due process.
*1131 ¶ 14 The district court ruled that it was precluded from setting aside the order by section 32-1-305(7), C.R.S.2015, which bars a challenge to an order declaring a special district organized. A division of this court affirmed. Marin Metro. Dist. v. Landmark Towers Ass'n, Inc., 2014 COA 40, ¶ 30, 2014 WL 1254720 ( Marin I ).
¶ 15 Landmark brought this action to recover taxes Landmark buyers had paid to the District and to enjoin the future levying of taxes pursuant to TABOR. Landmark asserted that TABOR and related statutes had been violated in several ways: (1) the bond and tax election had been illegally conducted because (a) the organizers' option contracts were a sham and (b) the Landmark buyers had not been allowed to participate in the election; (2) the District had improperly disbursed bond funds for the benefit of Mr. Davidson; (3) the District set the property tax levy for debt service at a mill levy level higher than that allowed by the service plan or otherwise allowed by law; and (4) the District had made the bonds subject to a net effective interest rate higher than the limit set in the service plan. Landmark also asserted that (5) taxing the Landmark buyers violated their constitutional right to due process because the improvements funded by the bonds provided no benefit to Landmark property.
¶ 16 The district court ruled in Landmark's favor on contentions (2), (3), and (5); ordered the District to refund Landmark buyers the portion of the misused bond funds that the Landmark buyers had paid; ordered the District to refund Landmark buyers the property taxes collected in excess of the mill levy limit set in the service plan; and enjoined the District from levying further illegal taxes on Landmark. The court ruled in the District's favor on contentions (1) and (4).
¶ 17 The district court subsequently held a TABOR refund hearing and approved the District's proposed refund plan. At the refund hearing, Landmark brought two additional claims against the District, Bondshares, and UMB, which the district court denied. The district court later denied Bondshares' and UMB's motion for an award of costs as the prevailing parties on Landmark's additional claims.
¶ 18 On appeal, defendants contend that we should reverse the district court's orders for the following reasons: (1) Landmark's challenge to the bond and tax election is untimely under section 11-57-212, C.R.S.2015; (2) the district court erred in entering an injunction based on a finding of a due process violation because the court erroneously applied special assessment law to the District's ad valorem property tax; (3) the District's property tax mill levy does not exceed that allowed by TABOR and applicable statutes; (4) the misuse of the bond funds did not violate TABOR because TABOR does not apply to bond proceeds; (5) the court's injunction violates the Uniform Taxation Clause; and (6) the FDIC (which now owns the European Village property) is an indispensable party and should have been joined. Bondshares and UMB also contend that (7) they were the prevailing parties on two of Landmark's claims and thus should have been awarded costs.
¶ 19 Landmark cross-appeals the district court's order on liability, contending that the TABOR election was illegal and thus the bonds and taxes approved in the election are void.
¶ 20 We agree with Landmark. We address and reject defendants' first and sixth contentions and Bondshares' and UMB's contention regarding costs. Because of our disposition of Landmark's cross-appeal, we need not address defendants' second, third, fourth, and fifth contentions.
II. Defendants' Appeal
A. Timeliness of Landmark's Challenge
¶ 21 Defendants contend that all of Landmark's challenges to the validity of the taxes are barred by the thirty day time limit in section 11-57-212. We conclude that defendants waived this issue.
1. Standard of Review
¶ 22 Defendants' contention presents issues of statutory construction. We review such issues de novo. Beren v. Beren, 2015 CO 29, ¶ 11, 349 P.3d 233.
*1132 2. Analysis
¶ 23 Section 11-57-212 provides:
No legal or equitable action brought with respect to any legislative acts or proceedings in connection with the authorization or issuance of securities by a public entity shall be commenced more than thirty days after the authorization of such securities.
¶ 24 The time bar in section 11-57-212 is an affirmative defense. See Reider v. Dawson, 856 P.2d 31, 35 (Colo.App.1992) ("the statute of limitations is an affirmative defense"), aff'd in part and remanded in part, 872 P.2d 212 (Colo.1994) ; see also C.R.C.P. 8(c) ; Dinosaur Park Invs., L.L.C. v. Tello, 192 P.3d 513, 516 (Colo.App.2008) ("An affirmative defense is 'a legal argument that a defendant ... may assert to require the dismissal of a claim or to prevail at trial.' " (quoting State v. Nieto, 993 P.2d 493, 507 (Colo.2000) ). An affirmative defense is waived unless it is presented at trial. Blood v. Qwest Servs. Corp., 224 P.3d 301, 328-29 (Colo.App.2009) (an affirmative defense raised in pleadings but not presented at trial is not preserved for appeal, even if it is raised in a post-trial motion), aff'd, 252 P.3d 1071 (Colo.2011) ; see Christensen v. Hoover, 643 P.2d 525, 531 (Colo.1982) ("Defenses and objections not presented at trial are deemed waived....").
¶ 25 Contrary to defendants' assertion in their reply brief, they did not raise this issue in a manner sufficient to preserve it. Although the District cited section 11-57-212 in its answer and in the trial management order, it did not raise the issue at trial. The District asserts that its argument at trial that allowing a challenge to bonds years after they were issued would undermine the Colorado public securities market raised the section 11-57-212 statute of limitations sufficiently to preserve the defense. However, the District did not cite section 11-57-212 at any point during trial or argue at trial that Landmark's claims were barred by that statute. Thus, the defense was waived. See J.W. Constr. Co. v. Elliott, 253 P.3d 1265, 1271 (Colo.App.2011) (where affirmative defense was not raised at trial, identification of that defense in the answer and trial management order did not preserve it for appeal); Blood, 224 P.3d at 329 ; see also Core-Mark Midcontinent Inc. v. Sonitrol Corp., 2016 COA 22, ¶ 26, 2016 WL 611566 ("To preserve an argument as to why a particular decision is appropriate, a party must timely raise that specific argument.").
B. The FDIC
¶ 26 Defendants contend that the district court erred in adjudicating Landmark's claims without joining the FDIC because the FDIC is an indispensable party to this action.
¶ 27 Defendants raised this issue for the first time in their post-trial motion for reconsideration. But, a party must assert the defense of failure to join a party in its pleadings, in a motion for judgment on the pleadings, or at the trial on the merits. C.R.C.P. 12(h)(2). Defendants have known about the FDIC's interests in the action since it was filed; thus, their contention that the FDIC is an indispensable party is self-serving and untimely. See Greco v. Pullara, 166 Colo. 465, 470-71, 444 P.2d 383, 385 (1968). It follows that the district court did not err in adjudicating Landmark's claims in the FDIC's absence.
C. Bondshares' and UMB's Costs
¶ 28 Bondshares and UMB contend that the district court erred in denying their bill of costs because they prevailed on Landmark's fraudulent transfer and unjust enrichment claims against them. We disagree.
1. Background
¶ 29 The district court held a TABOR refund hearing to review the District's refund plan. At the refund hearing, Landmark filed a supplemental petition bringing additional claims of fraudulent transfer against the District, Bondshares, and UMB and unjust enrichment against Bondshares. The district court denied Landmark's new claims.
¶ 30 Bondshares and UMB moved for an award of costs. The district court denied the motion, reasoning that Bondshares and UMB were significantly involved in the trial and that their interests aligned with those of the District which was, on balance, the losing *1133 party. Thus, while no specific claims were asserted against Bondshares and UMB at trial, they had not prevailed in the overall context of the litigation.
2. Standard of Review and Applicable Law
¶ 31 "A trial court is given broad discretion to determine who is a prevailing party in multiple claim cases because of its unique opportunity to observe the course of the litigation." Archer v. Farmer Bros. Co., 90 P.3d 228, 231 (Colo.2004). We review a district court's determination of who is a prevailing party for an abuse of that discretion. Id. at 230. A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or when it misapplies the law. Reisbeck, LLC v. Levis, 2014 COA 167, ¶ 7, 342 P.3d 603.
¶ 32 Under C.R.C.P. 54(d), reasonable costs are awarded to the prevailing party in the litigation. A "prevailing party" is one who prevails on a significant issue in the litigation and derives some benefit sought by the litigation. Archer, 90 P.3d at 230"When a case involves many claims, some of which are successful and some of which are not, it is left to the sole discretion of the trial court to determine which party, if any, is the prevailing party and whether costs should be awarded." Id. at 231 ; see § 13-16-108, C.R.S.2015.
3. Analysis
¶ 33 Bondshares and UMB worked extensively with the District to present a united position against Landmark. As the district court noted, they have as much interest in defeating Landmark's claims as does the District. (Indeed, they have more of an interest in defeating Landmark's claims given that they stand to lose millions of dollars if Landmark prevails and the District cannot repay the bond debt.) Landmark prevailed on most significant issues at trial and recovered a substantial monetary judgment. We perceive no abuse of discretion in the district court's determination that Bondshares and UMB were not prevailing parties against Landmark merely because two of Landmark's claims against them were unsuccessful. See Lobato v. Taylor, 13 P.3d 821, 835 (Colo.App.2000), rev'd on other grounds, 71 P.3d 938 (Colo.2002).
III. Landmark's Cross-Appeal
¶ 34 Landmark contends that the district court erred in ruling that the District's TABOR election was valid because (1) the organizers who voted in the election were not eligible electors and (2) the Landmark buyers were eligible electors who did not receive constitutionally required notice. We agree with both of Landmark's contentions.
A. Issue Preclusion
¶ 35 As a preliminary matter, we reject defendants' contention that Landmark's challenge to the TABOR election is barred because the issues Landmark raises were previously litigated in Marin I .
¶ 36 Issue preclusion applies only if: (1) the issue sought to be precluded is identical to an issue actually and necessarily determined in the prior proceeding; (2) the party against whom estoppel is asserted was a party to, or is in privity with a party to, the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. Bebo Constr. Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 84-85 (Colo.1999).
¶ 37 The issues presented by Landmark's contentions on cross-appeal are not identical to the issues decided in Marin I . In Marin I, Landmark challenged the validity of the creation of the District. A division of this court affirmed the district court's ruling that it lacked jurisdiction over Landmark's challenge because section 32-1-305(7) bars challenges to the validity of special districts after they are created.
¶ 38 Defendants mischaracterize the disposition of Marin I in their reply brief by saying that the division ruled on issues "identical" to those Landmark raises now. The division in Marin I held that applying the statute barring Landmark's challenge to the creation of the District did not violate due process, specifically because the statute was *1134 "not merely a statute of limitations providing for a limited time period within which to mount a challenge, but rather a jurisdictional bar to an attack on the formation of the district." Marin I, ¶ 43. Section 32-1-305(7) does not apply to Landmark's present claims, which do not challenge the creation of the District.
¶ 39 Further, the Marin I division held that the notice requirements for the creation of a special district were met, and, thus, Landmark was not denied due process based on a lack of required notice. Id. at ¶ 42. In this case, Landmark contends that the District did not comply with the notice requirements for a valid TABOR election, which are addressed by different laws than those which pertain to the creation of a special district. Compare Colo. Const. art. X, § 20 (3)(b), with § 32-1-204, C.R.S.2015. Landmark also asserts due process violations not asserted in Marin I .
¶ 40 Thus, Landmark has not previously litigated the issues it raises in this case and is therefore not barred by issue preclusion from litigating those issues.
B. The Validity of the TABOR Election
1. Standard of Review and Applicable Law
¶ 41 The issue of who qualifies as an eligible TABOR elector is a question of statutory interpretation that we review de novo. Beren, ¶ 11. To the extent deciding the issue depends on findings of historical fact, we review the district court's findings for clear error. See Hamon Contractors, Inc. v. Carter & Burgess, Inc., 229 P.3d 282, 298 (Colo.App.2009).
¶ 42 Our primary goals in interpreting a statute are to determine and give effect to the General Assembly's intent. Battle North, LLC v. Sensible Housing Co., 2015 COA 83, ¶ 30, 2015 WL 3776835. We look first to the plain and ordinary meanings of the words and phrases used in the statute. Id. And we consider the language in the dual contexts of the statute as a whole and the comprehensive statutory scheme. Id.
¶ 43 TABOR requires a district to have voter approval for any new tax or tax increase, or for the creation of any multiple-fiscal-year district debt obligation. Colo. Const. art. X, § 20 (4). TABOR also requires a district to mail notice of an election to voters at least thirty days before the election. Id. at § 20 (3)(b).
¶ 44 Section 32-1-806, C.R.S.2015, provides that no person is permitted to vote in a special district election unless that person is an eligible elector as defined in section 32-1-103(5)(a).[2] Per section 32-1-103(5)(a), an eligible elector is a person who is registered to vote, and who is a resident of the special district or area to be included in the special district or who is an owner of taxable property in the special district or area to be included in the special district. Section 32-1-103(5)(b) provides that a person who is obligated to pay taxes under a contract to purchase taxable property in the special district or area to be included in the special district is considered an owner within the meaning of subsection (5). Taxable property is property subject to general ad valorem taxes. § 32-1-103(22).
2. Time Bar of Section 1-11-213(4)
¶ 45 Initially, we address the district court's ruling that Landmark's challenge to the TABOR election is barred by section 1-11-213(4), C.R.S.2015. That statute provides that to contest an election, the contestor shall file in the office of the clerk of the district court a written statement of the intention to contest the election within ten days after the official survey of returns has been filed with the designated election official. Section 1-11-213(4) also says that "[i]f a written statement of intent to contest the election is filed more than ten days after the completion of the official survey of returns, no court shall have jurisdiction over the contest."
¶ 46 We conclude that the district court erred in applying section 1-11-213(4), for several reasons.
*1135 a. Landmark's Challenges Are Substantive
¶ 47 In Cacioppo v. Eagle County School District Re-50J, 92 P.3d 453 (Colo.2004), the supreme court ruled that "[i]f the claim alleges that the ballot issue as passed cannot stand under the laws of this state, it is substantive in nature and thus not subject to the time requirements of ... section 1-11-213, which governs the time for appeal concerning challenges to election results." Id. at 465. The court concluded that because the specific claims brought by the plaintiff were related to defects in the ballot's form or content, they were not substantive in nature and thus were subject to the statutory time limit. The supreme court explicitly ruled that a claim relating to a failure to comply with a constitutional requirement, such as a lack of constitutionally required notice, would be substantive and not subject to the statutory time constraints. Id. at 468-69 ("However, because this claim goes to the information provided in the constitutionally required notice and not the ballot title, we determine that section 1-11-203.5 is inapplicable and does not bar the claim.").
¶ 48 Landmark claims that ineligible electors voted in the election and that eligible electors did not receive constitutionally required notice of the election. These claims fall squarely within the Cacioppo court's definition of a substantive claim because, if the claims are correct, the District would not have had the constitutional authority to issue the bonds or levy the taxes. See id. at 469 (indicating that the statutory time bar applied to the petitioner's claims because he did "not argue that the [d]istrict [was] without legal or constitutional authority to raise the tax"). Thus, Landmark's claims are not subject to the statutory time limit of section 1-11-213(4).
b. Conflict with TABOR
¶ 49 We also conclude that the time limit in section 1-11-213(4) cannot bar Landmark's claims because such a bar would limit the Landmark buyers' constitutional rights under TABOR.[3]
¶ 50 TABOR allows taxpayers, such as the Landmark buyers, four years to challenge the legality of taxes levied on them. Colo. Const. art. X, § 20 (1) (providing that individuals may file suit to enforce TABOR, and that "[r]evenue collected, kept, or spent illegally since four full fiscal years before a suit is filed shall be refunded with 10% annual simple interest from the initial conduct"). Imposing a ten-day statutory time limit to a claim asserting a constitutional right to refunds under TABOR would directly impair individuals' TABOR right to obtain refunds of taxes collected illegally in the previous four years. Rights provided by TABOR cannot be impaired by statute; thus, for this reason as well, we conclude that the statutory time limit does not bar substantive TABOR claims. See Cacioppo, 92 P.3d at 463 (implementing legislation for TABOR "is permissible as long as it does not directly or indirectly impair, limit, or destroy the rights that [TABOR] provides"); Passarelli v. Schoettler, 742 P.2d 867, 872 (Colo.1987) ("[W]here a statute and the constitution are in conflict[,] the constitution is paramount law."); see also White v. Davis, 163 Colo. 122, 125, 428 P.2d 909, 910 (1967) ("It is elementary that the requirements of due process of law under both the United States and Colorado Constitutions take precedence over statutory enactments of our legislature. This, of necessity, includes any bar to inquiry as may be provided in the statute, to those essential elements of due process including proper notice....").
c. Equitable Tolling
¶ 51 In any event, even if the statute of limitations in section 1-11-213(4) applies to Landmark's claims, the doctrine of equitable tolling would allow Landmark's claims to proceed.[4]
*1136 ¶ 52 The doctrine of equitable tolling may apply where the defendant's wrongful conduct prevented the plaintiff from asserting its claims in a timely manner. Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1096 (Colo.1996). "When a rigid application of the statute of limitations leads to an unjust result, courts may properly fashion an equitable exception to the limitations period that may be asserted against a governmental agency as well as against private persons." Shell W. E & P, Inc. v. Dolores Cty. Bd. of Comm'rs, 948 P.2d 1002, 1007 (Colo.1997).
¶ 53 A defendant is estopped from asserting a statute of limitations defense when: (1) the party to be estopped knows the relevant facts; (2) the party to be estopped intends that its conduct be acted on, or acts in a manner that the party asserting estoppel believes the party to be estopped has such intent; (3) the party asserting estoppel is ignorant of the relevant facts; and (4) the party asserting estoppel relies on the other party's conduct to its detriment. Olson v. State Farm Mut. Auto. Ins. Co., 174 P.3d 849, 858 (Colo.App.2007).
¶ 54 In Marin I, the division noted that the district court had found in that case that "there is little doubt, based upon the evidence presented to this court to date, that efforts were made [to] prevent the individuals who had entered into purchase contracts from finding out about the developer's intentions and efforts to create the District and the related tax liability which would burden the property they were purchasing." Marin I, ¶ 10. It is undisputed that, although the District had told Greenwood Village that it would provide written notice of the creation of the special district to Landmark buyers before closing, the District did not give Landmark buyers any notice of the creation of the special district.[5] Nor did the District give the Landmark buyers any notice (before or after the fact) of the TABOR election. The Landmark buyers did not find out about the taxes the District had approved until they received their tax bills-after they had closed on their purchase contracts, after the TABOR election had been held, and long after the alleged statutory deadline had passed for challenging the election.
¶ 55 The District prevented the Landmark buyers from finding out about the creation of the District and the TABOR election to pass heavy tax levies to fund a separate development. The Landmark buyers did not know about the TABOR election or the taxes it approved, and relied on the District's omissions in closing their purchase contracts. The District cannot now seek to use an extremely short statutory time limitation to prevent the Landmark buyers from challenging an election they did not know about. Therefore, we conclude that even if the statutory time bar in sections 1-11-213(4) applies to Landmark's claims, the District is estopped from asserting it. See Shell W. E & P, 948 P.2d at 1007.
3. The Organizers' Voter Eligibility
a. Background
¶ 56 When the organizational and TABOR elections were held, no one resided in the proposed district, and only limited partnerships, which are not eligible electors, owned taxable property in the district. Thus, the only possible eligible electors were persons obligated to pay taxes under contracts to purchase land in the district.
¶ 57 The district court's factual findings as to the steps the organizers took to become eligible electors to create the District and to approve the bonds and taxes were as follows:
The evidence presented on trial showed that Zachary Davidson and five of his associates, including Chad Cox, entered into contracts to purchase taxable property within the proposed special district which obligated them to pay taxes as such contracts are described in C.R.S. 32-1-103(5). They did so specifically to make themselves eligible voters. The contracts were dated August 31, 2007. The seller under the agreements was Everest Marin L.P. which owned the parcel upon which the *1137 European Village project was to be constructed. Each purchase agreement related to an undivided one-twentieth (1/20th) interest in a ten foot by ten foot parcel referred to on trial as a "director's parcel." The consideration for the purchase by each buyer was five hundred dollars of which ten dollars was payable on execution of the contract and the balance at closing. The closing period was open but to occur within eight years. The contract specifically provided that the purchaser agreed to pay all taxes that may be levied against the purchased interest from the time the contract was executed. The contracts also provided that the seller could itself pay the taxes then collect the amount from the purchaser.... According to the testimony on trial of Mr. Cox, he did not ever pay the ten dollars earnest money and there was a tacit agreement between Davidson and the others contracting for the director's parcels that they would never actually have to personally pay the taxes. Closing never occurred on any of the director's parcel contracts. As such, the five hundred dollar purchase payment never became due.
¶ 58 Landmark argued at trial that the organizers' contracts were sham agreements which did not make them eligible to vote in the TABOR election. The district court ruled that, even though the organizers never paid the down payments for the "director's parcels" or paid any taxes on the land, the contracts were a legitimate way to create eligible electors under section 32-1-103(b)(5). The court characterized these failures to pay down payments and taxes as "de minimis" because they involved small amounts of money.
b. Analysis
¶ 59 We accept the district court's findings of historical fact regarding the creation of the organizers' contracts, the terms of the contracts, and the circumstances surrounding the creation of the contracts. But we disagree with its legal conclusion that the contracts were sufficient to make the organizers eligible electors.[6]
¶ 60 The purpose of requiring a district to gain approval from persons who own property within a district before it imposes a new tax is to allow the people who will have to pay the tax to decide whether the tax should be levied. See Huber v. Colo. Mining Ass'n, 264 P.3d 884, 890 (Colo.2011) ("[TABOR's] purpose is to protect citizens from unwarranted tax increases and to allow citizens to approve or disapprove the imposition of new tax burdens.").
¶ 61 The organizers' contracts did not comport with this purpose because they were illusory.
¶ 62 Sham contracts are without legal consequence.
We believe it to be a well-settled rule in Colorado and elsewhere that in an action on a contract executed by the parties thereto extrinsic evidence is admissible to establish that the parties did not intend it to be an exclusive, authoritative memorial of their agreement, and where they have previously agreed that their written promises are not to bind them, that agreement controls, and no legal obligations whatever arise under the contract. Such a contract is a mere sham, lacking all legal efficacy, and extrinsic parol or other extrinsic evidence will always be received on the determination of that issue.
McGuire v. Luckenbach, 131 Colo. 333, 339, 281 P.2d 997, 1000 (1955) ; see also 15 Arthur Lindon Corbin & Joseph M. Perillo, Corbin on Contracts § 85:19 (rev. ed. 2003).
¶ 63 The facts found by the district court, and other undisputed facts, show that the organizers' contracts for options to purchase parcels were sham agreements.[7] These facts include the following:
*1138 • The size of the individual parcels-an undivided 1/20th interest in a 100-square-foot parcel-is so small that ownership of such a parcel would not permit any beneficial use thereof. Though it is true that the applicable statutes do not place limits on the size of a parcel to qualify someone as an eligible elector, we think the size of the parcel is relevant to determining the bona fides of any contract to purchase it.
• Though the contracts purported to obligate the option holder to pay property taxes, they also waived any right to specific performance of the obligation to pay and any right to seek damages for any failure to pay. Therefore, the obligation to pay taxes was illusory. See Sentinel Acceptance Corp. v. Colgate, 162 Colo. 64, 67-68, 424 P.2d 380, 382 (1967) (contract which left performance to the sole discretion of one party was illusory); Bernhardt v. Hemphill, 878 P.2d 107, 111 (Colo.App.1994) (where parties did not give up anything of value, and purported contract did not create any obligations, contract was illusory).
• One of the organizers testified, without contradiction, that the organizers agreed amongst themselves that none of them would have to pay taxes on the parcels. Cf. Nat'l Boulevard Bank of Chicago v. Makens, 370 N.W.2d 183, 186, 188 (S.D.1985) (where testimony established that parties did not intend for contract for deed to be binding, it was a sham and unenforceable).
• None of the organizers paid the down payment required by the option contracts. Though the district court characterized those failures as de minimis because of the small amount of money at issue, those failures were not qualitatively de minimis in light of the other evidence that the agreements were never intended to bind the parties.
• None of the organizers paid any property taxes. Again, these failures were not qualitatively de minimis.
• None of the organizers exercised their options to purchase.
• None of the contracts was ever recorded in the real property records.
¶ 64 We therefore conclude that the organizers' contracts did not make them eligible electors under section 32-1-103(5). Thus, the organizers illegally participated in the District's TABOR election and their votes are void. It follows that the TABOR election itself was invalid.
4. Landmark Buyers' Voter Eligibility
a. Background
¶ 65 As noted, 130 individuals were under contract to purchase units in Landmark when the District held its TABOR election. Each of those contracts required the buyer to close as soon as the purchased unit was completed and each contract obligated the buyer to pay pro-rated property taxes from the date of closing to the end of the year. The Landmark contracts were enforceable against the buyers and the buyers had paid substantial nonrefundable deposits.
¶ 66 The district court ruled that these contracts did not make the Landmark buyers eligible electors under section 32-1-103(5) because the Landmark buyers were not obligated to pay taxes under the contracts and they were merely "potential future owners."
b. Analysis
¶ 67 Section 32-1-103(5)(b) qualifies those who are obligated to pay taxes under a contract to purchase taxable property within a special district as eligible electors in that district. In ruling that a person bound by such a contract is not an eligible elector unless the contract obligates the buyer to pay taxes before closing, the district court read the statute too narrowly. There is nothing in the statute to indicate that a current obligation to pay property taxes at closing would not qualify a person with such an obligation as an eligible elector. And such *1139 an exclusion would be inconsistent with TABOR. A party to a binding contract to purchase property will, of course, be required to pay any property taxes lawfully imposed. Thus, it makes sense to allow such parties to vote in an election to impose property taxes given TABOR's purpose to allow citizens to decide whether they will be taxed. See Huber, 264 P.3d at 890.
¶ 68 The contracts required Landmark buyers to begin paying property taxes on their units at the time of closing. This obligation existed at the time of the TABOR election. Thus, we conclude that those under contract to purchase units in the Landmark Towers were eligible electors in the TABOR election.[8]
¶ 69 Because the Landmark buyers were eligible electors, they should have received notice of the election as constitutionally required by TABOR. Colo. Const. art. X, § 20 (3)(b). It is undisputed that they did not.
¶ 70 In sum, because the TABOR election was conducted illegally-with the participation of ineligible voters and without constitutionally required notice to eligible voters-the District's taxes to pay the bonds were levied illegally. Pursuant to TABOR's refund provision, the District must refund all illegal taxes paid with ten percent annual simple interest. Id. at § 20 (1). The Landmark buyers are also entitled to an order enjoining the District from levying any further taxes without proper voter approval.
IV. Other Issues
¶ 71 Because of our resolutions of the issues discussed above, we need not address defendants' contentions that the district court misapplied special assessment law to the District's ad valorem taxes, the District's mill levy level does not violate TABOR, the misuse of bond funds did not violate TABOR, and the injunction issued by the district court requires the District to violate the Uniform Taxation Clause.
V. Conclusion
¶ 72 The district court's judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.
JUDGE WEBB and JUDGE BOORAS concur.

The District did not give Landmark buyers such notice.

The parties agree that the provisions of Title 32, C.R.S. 2015, are applicable to the TABOR election.

Our analysis in this regard applies equally to defendants' contention that Landmark's claims are barred by section 11-57-212, C.R.S. 2015. At oral argument, defendants' counsel conceded that section 11-57-212 does not apply in the event of a TABOR violation.

This reasoning also applies equally to defendants' argument that section 11-57-212 bars Landmark's claims.

There was also unrebutted testimony by Landmark buyers that at closing sales personnel told them there were no special districts.

Even if the issue of whether a contract is a sham is a factual one, we would conclude that the district court clearly erred in finding that the organizers' contracts were not sham agreements.

The district court in Marin I found that the organizers' contracts were sham agreements, and that Landmark had therefore "established that the creation of the District was never approved by taxpaying electors," but nevertheless determined that it could not declare the creation of the District invalid because of section 32-1-305(7), C.R.S. 2015, which does not apply to this case. The district court noted that, while there was testimony that contracts such as those at issue are used to create special districts, no legal authority authorizes such a practice, and that deeming such contracts to create eligible electors legal "would render the requirement [of a vote by individuals with assets and funds at risk] a meaningless exercise in document creation." We agree.

The division in Marin I noted that the district court in that case had said that "Landmark has established that the creation of the District was never approved by taxpaying electors." Marin Metro. Dist. v. Landmark Towers Ass'n, Inc., 2014 COA 40, ¶ 11, 2014 WL 1254720.